**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 29, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CARLOS AMANDO GALAZ-FELIX,
also known as Esteban Felix-Urrea,
also known as "Topo,"

Defendant-Appellant.

No. 04-4311
(District of Utah)
(D.C. No. 1:03-CR-62-04-TC)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **LUCERO** and **MURPHY**, Circuit Judges.

After examining the briefs and the appellate record, this panel has

determined unanimously to grant the parties' request for a decision on the briefs

without oral argument. Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is,

therefore, ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. INTRODUCTION

A jury found Carlos Armando Galaz-Felix guilty of conspiracy to distribute controlled substances, possession of a firearm by a restricted person, and unlawful reentry by a deported alien. The district court sentenced him to life imprisonment. Galaz-Felix appeals, arguing the district court erred when it failed to suppress evidence obtained by police during a warrantless search of his residence and when it admitted into evidence certain "drug ledgers" found in his house. Galaz-Felix also asserts he must be resentenced in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005). This court exercises jurisdiction pursuant to 28 U.S.C. § 1291. We **affirm** the district court's decisions with respect to the search and evidentiary issues. We **remand** for resentencing.

## II. BACKGROUND

Early in 2003, police officers in Ogden, Utah began to suspect that Galaz-Felix was part of a drug distribution network. On April 18, 2003, Ogden City Police officers Aaron Johnson and Troy Burnett went to Galaz-Felix's home, identified themselves, and asked if they could come inside. Galaz-Felix opened the door and invited the officers into the house. Galaz-Felix's wife, Brenda Beltran, was also in the house at the time.

Officer Johnson explained to Galaz-Felix and Beltran that he and Officer Burnett were investigating drug complaints. He asked them whether they used

illegal drugs. When Galaz-Felix and Beltran told Officer Johnson they did not use drugs, Officer Johnson asked whether police officers could search the home. Both Galaz-Felix and Beltran answered in the affirmative.

After Galaz-Felix consented to the search, he immediately began to make calls on his cell phone. While Galaz-Felix was on the phone, Officer Johnson followed Beltran into the kitchen and showed her a "consent to search" form. Officer Johnson explained the form, requested that Beltran read it, and asked whether she would be willing to sign it. Beltran read and signed the consent to search form.

After Beltran signed the consent form, other police officers began to search the house. In the course of the search, officers discovered a firearm, a large amount of cash, some marijuana, and "ledgers" allegedly used to record drug transactions. Officers arrested and questioned Galaz-Felix and Beltran.

## III. ANALYSIS

### A. Suppression of Evidence

Galaz-Felix claims the district court erred when it denied his motion to suppress evidence obtained from the search of his residence because the court incorrectly found he had consented to the search. When reviewing a district court's denial of a motion to suppress, this court "accept[s] the district court's

factual findings unless those findings are clearly erroneous." *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999). "[W]e consider the totality of the

circumstances and view the evidence in a light most favorable to the government. . . . The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *Id.* (citations omitted).

Galaz-Felix contends he presented evidence to show that police officers began to search his residence without consent. Galaz-Felix claims he asked Officers Johnson and Burnett for a search warrant when they first entered his house, and claims he attempted to request an attorney when the officers failed to produce a warrant. Both he and Beltran testified that police officers began to search the house before Beltran signed the consent to search form. Galaz-Felix also contends recorded telephone conversations from the day of the search demonstrate that police officers had entered the residence by 5:50 p.m. He argues these recordings cast doubt on Officer Johnson's testimony that he and Officer Burnett did not enter the house until 6:02 p.m. Galaz-Felix also points out the consent to search form indicates Beltran did not give her written consent to the search until 6:15 p.m. Galaz-Felix argues the gap between the time police entered his residence and the time Beltran signed the consent form is substantial and supports his contention that the police began their search before he or Beltran consented.

The district court considered and rejected Galaz-Felix's arguments. It took into account Galaz-Felix's and Beltran's personal interest in the outcome of the suppression hearing, noted several inconsistencies in their version of events, and described some parts of their testimony as having "an 'over the top' quality." *United States v. Galaz-Felix*, No. 1:03-CR-62, at 14–16 (D. Utah Feb. 5, 2004). The court assigned no significance to the "time gaps" highlighted by Galaz-Felix because there was no evidence the various police clocks were synchronized, nor was there evidence the time written on the consent form was anything more than an estimate. *Id*. at 14. The court also remarked that Galaz-Felix's and Beltran's account of the search "would have been completely inconsistent with customary police practice." *Id*. at 17. It concluded "[t]he only credible evidence in the record suggests that Mr. Galaz simply, and voluntarily, agreed to let the officers inside the house." *Id*. at 20. Viewing the evidence in the light most favorable to the government, the district court's factual findings and credibility determinations are not clearly erroneous.

**B.    Improper Admission of Evidence**

Galaz-Felix argues the district court erred when it admitted into evidence "drug ledgers" found during the search of his home. Galaz-Felix admits he did not object to the admission of the drug ledgers at trial. Because Galaz-Felix did not raise an objection at trial, this court will review only for plain error. *United States*

*v. Soussi*, 316 F.3d 1095, 1109 (10th Cir. 2002). Under this standard, we reverse the district court's decision to admit the disputed evidence only if that decision "placed the underlying fairness of the entire trial in doubt or affected [Galaz-Felix's] substantial rights." *Id.*

The government alleged Galaz-Felix maintained the drug ledgers in order to track and record drug transactions. After conducting a hearing on the issue, the district court admitted the drug ledgers as nonhearsay evidence under Rule 801 of the Federal Rules of Evidence. Galaz-Felix now argues, for the first time, that the drug ledgers lacked a proper foundation and should not have been admitted into evidence because the government failed to reliably establish that Galaz-Felix authored the ledgers.

Ample evidence in the record connects Galaz-Felix to the drug ledgers. Galaz-Felix was one of two adult residents of the home where investigators discovered the drug ledgers. In a recorded telephone conversation from jail, Galaz-Felix gave a coconspirator information about outstanding drug transactions; the information supplied by Galaz-Felix matched the notes contained in the drug ledgers. In another phone call, Galaz-Felix told his associate that the police had obtained the drug ledgers.

Under the Federal Rules of Evidence, a statement is not hearsay if it "is offered against a party and is . . . the party's own statement" or "a statement of

which the party has manifested an adoption or belief in its truth." Fed. R. Evid. 801(d)(2)(A), (B). Here, a preponderance of the evidence establishes that Galaz-Felix authored the ledgers or, at least, manifested a belief in their truth. Accordingly, the district court did not err when it admitted the ledgers.

## C.    Resentencing Under *Booker*

Galaz-Felix argues the district court committed constitutional *Booker* error when it used judge-found facts to impose a mandatory sentence beyond that which would have been authorized by the jury's verdict alone. *See United States v. Gonzales-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (en banc) (defining constitutional *Booker* error). Because Galaz-Felix properly preserved this argument, this court will review for harmless error. *United States v. Windrix*, 405 F.3d 1146, 1158 (10th Cir. 2005). If we find error, the burden is on the government to establish the error was harmless. *United States v. Lang*, 405 F.3d 1060, 1065 (10th Cir. 2005).

A jury found Galaz-Felix guilty of conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine, which corresponds to 1000 kilograms or more of marijuana equivalent. *See* U.S. Sentencing Guidelines Manual ("USSG") § 2D1.1, cmt. n.10 (2003) (establishing marijuana equivalent for methamphetamine). Under the Sentencing Guidelines, this quantity

of methamphetamine[1] results in a base offense level of thirty-two.  *Id*. §

2D1.1(c)(4).

At sentencing, the district court reviewed the evidence and concluded that

Galaz-Felix actually conspired to distribute over 400,000 kilograms of marijuana

equivalent.  Based on this judge-found fact, the court assigned Galaz-Felix a base

offense level of thirty-eight, instead of thirty-two, the base offense level supported

by the jury's verdict.  Applying the Sentencing Guidelines in a mandatory fashion

and adding various enhancements, the court sentenced Galaz-Felix to life

imprisonment.  The court noted it would have imposed a different sentence if not

for the Sentencing Guidelines.

"Constitutional *Booker* error . . . occurs in the context of a mandatory

sentencing regime when a judge-found fact (other than the fact of a prior

conviction) increases a defendant's sentence beyond the maximum authorized by a

jury verdict or a guilty plea through the court's application of the mandatory

guidelines."  *United States v. Visinaiz*, 428 F.3d 1300, 1315 (10th Cir. 2005).

Here, there is no question that the district court committed constitutional *Booker*

---

[1] "When we review a verdict where the jury did not find a *specific* amount of drugs attributable to the defendant, but a *range*, we only know that the jury found unanimously the amount at the bottom of the range."  *United States v. Magallanez*, 408 F.3d 672, 682 (10th Cir. 2005).  Thus, in the instant case, we only know that the jury found unanimously that Galaz-Felix conspired to distribute 500 grams of methamphetamine.

error when it imposed a mandatory sentence based on facts neither admitted by the defendant nor authorized by the jury's verdict, which facts increased Galaz-Felix's base offense level by six levels. Moreover, the government concedes the error was not harmless because the district court applied judge-found facts in a mandatory fashion.[2] Accordingly, we remand for resentencing.

## IV.   CONCLUSION

For the reasons set forth above, we **affirm** the district court's decisions with respect to the search and evidentiary issues. We **remand** for resentencing.


ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[2]The government argues the district court did not err when it determined Galaz-Felix's sentence using facts found by the judge under a preponderance of the evidence standard. According to the government, the trial court's only error was in treating the Guidelines as mandatory. The government's distinction makes no sense in the context of constitutional *Booker* error. By definition, constitutional *Booker* error requires a sentence enhancement which stems from *both* the use of judge-found facts *and* the mandatory application of the sentencing guidelines. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (en banc) (defining constitutional *Booker* error as arising when a court "rel[ies] upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily.").