**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CARLOS ARMANDO GALAZ-
FELIX, a/k/a Esteban Feliz-Urrea,
a/k/a "Topo,"

      Defendant - Appellant.

No. 06-4100
(D.C. No. 1:03-CR-62-004-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

Defendant-Appellant Carlos Armando Galaz-Felix appeals his sentence of

360 months' imprisonment followed by ten years' supervised release resulting

from his conviction on counts involving violations of controlled substances,

immigration, and firearms laws. Mr. Galaz-Felix argues that the recommended

Guidelines sentence was improperly calculated by the district court because there

was insufficient evidence to justify: (1) its determination of the quantity of drugs

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

involved, (2) his leadership role in the conspiracy, (3) his possession of a firearm in connection with the conspiracy, and (4) his obstruction of justice. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## Background

I.     Procedural History

On May 3, 2003 a grand jury returned a thirteen-count indictment charging Mr. Galaz-Felix and thirteen others with various violations of the controlled substances, immigration, and firearms laws of the United States. Mr. Galaz-Felix was specifically charged with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1), possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5) (Count 8), fraudulent use of a visa in violation of 18 U.S.C. § 1546 (Count 9), and unlawful reentry by a deported alien in violation of 8 U.S.C. § 1326 (Count 11). Aplt. App. at 104-16. The government dismissed Count 9 prior to trial, and Mr. Galaz-Felix was subsequently convicted by a jury on Counts 1, 8, and 11.

The district court sentenced Mr. Galaz-Felix to life imprisonment. Id. at 118. Mr. Galaz-Felix appealed, alleging three points of error: (1) that the district court should have suppressed certain evidence seized from his house, (2) that the district court improperly admitted drug ledgers into evidence pursuant to Fed. R.

Evid. 801(d)(2), and (3) that the district court improperly enhanced his sentence based on judge-found facts and applied the Sentencing Guidelines in a mandatory fashion. See United States v. Galaz-Felix, 160 F.App'x. 787 (10th Cir. 2005). We affirmed the district court's denial of the motion to suppress and its admission of the drug ledgers, see id. at 789-90, but we remanded for resentencing in light of United States v. Booker, 543 U.S. 220 (2005)[1], which was handed down while the appeal was pending.

The jury found Mr. Galaz-Felix guilty of conspiring to distribute 500 grams or more of methamphetamine. This offense has a base offense level of 32 under the Guidelines, assuming Mr. Galaz-Felix conspired to distribute only the minimum 500 grams of methamphetamine. See U.S.S.G. § 2.D1.1(c)(4). At the original sentencing, however, the district court, adopting the recommendation of the Presentence Investigation Report (PSR), determined that the conspiracy actually involved an amount of drugs equivalent to 441,179.2 kilograms of marijuana,[2] which resulted in a base offense level of 38. See id. § 2D1.1(c)(1).

---

[1] Booker held that it is unconstitutional to enhance a defendant's sentence based on judge-found facts, other than the fact of a prior conviction, in the context of a mandatory sentencing regime. See United States v. Visinaiz, 428 F.3d 1300, 1315 (10th Cir. 2005). In Booker, the Supreme Court rendered the Guidelines advisory as a remedy to the problem. Booker, 543 U.S. at 264.

[2] In this case, the conspiracy involved methamphetamine, cocaine, and narcotic mushrooms. Accordingly, the district court converted the various drugs into marijuana equivalent for purposes of determining a base offense level. See U.S.S.G. § 2D1.1, cmt. n.10 ("The Drug Equivalency Tables . . . provide a means for combining differing controlled substances to obtain a single offense level.").

The district court also adopted the PSR's recommendation of a four-level enhancement for Mr. Galaz-Felix's leadership role in the conspiracy, see id. § 3B1.1(a), a two-level enhancement for his possession of a firearm in connection with the offense, see id. § 2D1.1(b)(1), and a two-level enhancement for obstruction of justice, stemming from Mr. Galaz-Felix's testimony at the hearing on the motion to suppress, see id. § 3C1.1. These enhancements raised Mr. Galaz-Felix's offense level from 38 to 46. Given that Mr. Galaz-Felix's criminal history was a category II, the resulting Guidelines recommendation was a sentence of life imprisonment, which the district court imposed.

On remand, the district court reviewed the sentencing record and found the same quantity of marijuana equivalent, the same enhancements, and the same Guidelines recommendation of life imprisonment. After considering the factors in 18 U.S.C. § 3553(a), the district court sentenced Mr. Galaz-Felix to serve 360 months' imprisonment followed by ten years' supervised release. In this second appeal, Mr. Galaz-Felix challenges the factual basis supporting the district court's drug quantity determination and the three enhancements.

II.    The Conspiracy

Mr. Galaz-Felix arrived in the Ogden, Utah area in December, 2002.[3] Shortly thereafter, he was observed at an Ogden apartment at 1095 16th Street,

---

[3] Mr. Galaz-Felix had previously been deported from the United States in June 1998. That deportation followed a conviction for a second-degree felony committed in Weber County, Utah.

which was rented by co-defendant Julio Lopez and occupied by co-defendants Israel Gomez-Astorga and Juan Ulvado-Tapia. In December 2002, the apartment's owner, Michael Hurst, visited the apartment and was greeted by Mr. Galaz-Felix, who gave Mr. Hurst a small amount of crystal methamphetamine. On January 3, 2003, Mr. Galaz-Felix rented his own house at 3464 Grant Avenue in Ogden.

On January 8, 2003, a consent search was conducted on the apartment at 1095 16th Street by officers of the Weber-Morgan Narcotics Strike Force. During the search, officers found approximately three pounds of crystal methamphetamine and numerous documents pertaining to co-defendants Mr. Lopez, Mr. Gomez-Astorga, and Mr. Ulvado-Tapia. In a recorded phone call on January 14, 2003, between Mr. Gomez-Astorga (who was jailed) and Mr. Lopez, Mr. Gomez-Astorga complained that Mr. Galaz-Felix was not doing enough to help him.

During the course of surveillance and wiretaps conducted on the phones of co-defendants Jose Aparicio and Dean Ramirez during February and March 2003, officers became aware of Mr. Galaz-Felix's involvement in certain drug offenses they were investigating. For example, on March 5, 2003, officers intercepted a phone call between Mr. Aparicio and Mr. Galaz-Felix, in which Mr. Galaz-Felix advised Mr. Aparico that a supply of drugs had arrived from his brother, a fugitive co-defendant named Esteban Galaz-Felix (aka "Genaro"), that Mr.

Ramirez had part of the shipment, and that Mr. Aparicio should not let Mr. Ramirez tell him otherwise. On March 29, 2003, officers intercepted a call between Mr. Ramirez and Mr. Lopez, in which both complained that Mr. Galaz-Felix was aggressively collecting money from them.

Later, on April 13-14, 2003, Mr. Galaz-Felix moved a quantity of drugs consisting of ten or eleven packages from his house to Mr. Ramirez's auto-body shop, where Mr. Ramirez took them for safekeeping. The next day, Mr. Galaz-Felix complained to Genaro that Mr. Ramirez had taken control of the drugs. Mr. Ramirez subsequently returned the drugs to Mr. Galaz-Felix. In mid-April, 2003, an investigation occurred at the home of Martin Villafuentes, who stored cash and drugs for Mr. Galaz-Feliz. In an intercepted phone call between Mr. Ramirez and Genaro, Mr. Ramirez stated that after officers visited Mr. Villafuentes' house, Mr. Galaz-Felix told Mr. Ramirez, "I need a favor–for you to stash this for me over there," and Mr. Ramirez replied, "Then bring it. You know I'm not going to tell you no." II Aplee. Supp. App. at 435.

Several days later, on April 18, 2003, officers visited Mr. Galaz-Felix's house. Their primary objective was to identify Mr. Galaz-Felix and to obtain consent to search his house. Mr. Galaz-Felix and his wife gave the officers permission to search their house. During the search, the officers found a semiautomatic pistol in a suitcase on the top shelf of Mr. Galaz-Felix's bedroom closet. In the same room, the officers located a quantity of cash and several notes

and a notebook that officers testified were "pay-owe" sheets relating to the distribution of drugs. In a spare bedroom, the officers found two plastic-wrapped packages each containing approximately $10,000 in cash. The officers also found a plastic wrapping in a trash can with a notation indicating it had previously contained cash. In the cellar of the house, the officers found a slashed car tire, to which a drug dog alerted. They also found a partially completed hole in the floor, in which objects could be hidden.

The notes and notebook, otherwise referred to at trial as the "drug ledgers," detailed the arrival and distribution of substantial shipments of multi-pound quantities of crystal methamphetamine. They also detailed how many one-pound packages arrived in a given shipment, to whom they were distributed, and what each recipient was charged per pound. The records also indicated that Mr. Lopez was given $10,000 to hire an attorney for Mr. Gomez-Astorga and Mr. Ulvado-Tapia.

Mr. Galaz-Felix was subsequently arrested. In calls placed to Mr. Ramirez from jail, Mr. Galaz-Felix confirmed both the contents of the drug ledgers and his authorship of the documents. On April 19, 2003, he phoned Mr. Ramirez and gave precise information regarding outstanding debts and quantities for various individuals, as well as the unit price each individual was charged. The information conveyed in the call matched the information contained in the drug ledgers. In another call, on April 21, 2003, Mr. Galaz-Felix told Mr. Ramirez that

officers had taken the drug ledgers but he assured Mr. Ramirez that Mr. Ramirez's name did not appear in them.

Also during the call on April 19, Mr. Galaz-Felix instructed Mr. Ramirez to collect payment from an individual named in the drug ledgers and identified as "Pollo." In subsequent calls, Mr. Ramirez explained how he attempted to collect money from Pollo, and eventually reported his success to Mr. Galaz-Felix in a call on April 21, 2003. In the same call, Mr. Ramirez told Mr. Galaz-Felix that Mr. Gomez-Astorga wanted a new lawyer. Mr. Galaz-Felix responded that Mr. Gomez-Astorga would just "ha[ve] to deal with that." Id. at 464, 467.

## Discussion

After Booker, we review sentences for reasonableness. United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam). Reasonableness includes both substantive and procedural elements. United States v. Mateo, 471 F.3d 1162, 1166 (10th Cir. 2006). "We determine substantive reasonableness by reference to the actual length of the sentence imposed in relation to the sentencing factors enumerated in 3553(a)." Id. These factors "include the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment." Kristl, 437 F.3d at 1053 (citing § 3553(a)). A sentence within the advisory

Guidelines range carries a presumption of substantive reasonableness. Id. at 1055.

"In order to be procedurally reasonable, a sentence must be reasoned, or calculated utilizing a legitimate method." Mateo, 471 F.3d at 1166. Although the Guidelines are no longer mandatory, district courts must consult them and consider them as another factor when sentencing. Booker, 543 U.S. at 264. Consequently, "sentences based on miscalculations of the Guidelines are considered unreasonable because the manner in which they were determined was unreasonable." United States v. Cage, 451 F.3d 585, 591 (10th Cir. 2006) (internal quotations and alterations omitted).

Because Mr. Galaz-Felix challenges only the sufficiency of the evidence supporting the district court's determination of his base offense level under the Guidelines, his challenge is really one that the advisory Guidelines sentence was improperly calculated. Thus, we must review for procedural reasonableness, analyzing the district court's factual findings supporting the drug quantity and the enhancements for clear error. See Kristl, 437 F.3d at 1055. Given the posture of Mr. Galaz-Felix's argument,[4] if there was sufficient evidence for the drug quantity and the enhancements, then the Guidelines calculation is correct and we need not proceed to analyze the sentence for substantive reasonableness. If,

---

[4] Mr. Galaz-Felix does not argue that the sentence is substantively unreasonable based on the factors contained in 18 U.S.C. § 3553(a).

however, there was insufficient evidence to support the enhancements, then the Guidelines calculation was in error, and we must reverse unless the error was harmless. Kristl, 437 F.3d at 1054-55.

I. The Drug Quantity Determination

"In a controlled substances case, a defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of [a conspiracy], all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." United States v. Lauder, 409 F.3d 1254, 1267 (10th Cir. 2005) (citing U.S.S.G. § 1B1.3, cmt. n.2). The government must prove the amount of drugs attributable to Mr. Galaz-Felix by a preponderance of the evidence. Id. We review the district court's findings on drug quantity for clear error. Id.

As previously stated, the district court determined that Mr. Galaz-Felix's offense involved an amount of methamphetamine and other drugs equivalent to 441,179.2 kilograms of marijuana. Under U.S.S.G. § 2D1.1(a)(3), the district court was required to assign to Mr. Galaz-Felix the base offense level specified by the Drug Quantity Table for the amount of marijuana involved in his crime. The maximum offense level allowed by the Drug Quantity Table is 38 (the offense level assigned to Mr. Galaz-Felix). This offense level is assigned to an offense involving 30,000 kilograms or more of marijuana. See U.S.S.G. § 2D1.1(c)(1).

Accordingly, in order to impose an offense level of 38, the district court had only to find, by a preponderance of the evidence, that Mr. Galaz-Felix's offense involved an amount of methamphetamine and other drugs equivalent to 30,000 kilograms of marijuana. Thus, the 441,179.2 kilograms of marijuana equivalent the district court actually found is, to say the least, more than adequate to trigger an offense level of 38. Because any greater amount of marijuana equivalent is superfluous, an error in its calculation would be harmless. See United States v. Guevara, 277 F.3d 111, 125 (2d Cir. 2001), amended on reh'g, 298 F.3d 182 (2002), cert. denied, 538 U.S. 936 (2003).

In his first appeal, Mr. Galaz-Felix argued that the drug ledgers were improperly admitted because there was insufficient evidence to show that he authored them. See Galaz-Felix, 160 F.App'x. at 790. We rejected this argument, holding: "Ample evidence in the record connects Galaz-Felix to the drug ledgers. . . . Here, a preponderance of the evidence establishes that Galaz-Felix authored the ledgers or, at least, manifested a belief in their truth." Id. In this appeal, Mr. Galaz-Felix argues that the drug ledgers are insufficiently connected to him. This argument is foreclosed by our previous determination under the "law of the case" doctrine. See Roth v. Green, 466 F.3d 1179, 1187 (10th Cir. 2006).

The drug ledgers indicate that 28 pounds of drugs were received and distributed to various members of the conspiracy. I Aplee. Supp. App. at 259-62;

- 11 -

II Aplee. Supp. App. at 314-15. The ledgers also indicate another shipment of 23 pounds of drugs was received, of which 18 pounds were distributed and another 5 kept in storage. I Aplee. Supp. App. at 268-71; II Aplee. Supp. App. at 326-27. On subsequent pages, the drug ledgers detailed each distributor's individual account and fix a price per unit for the drugs, which allowed officers to surmise that the drugs referenced in the ledgers were crystal methamphetamine (based on street value). I Aplee. Supp. App. at 274-76; II Aplee. Supp. App. at 328-33.

Based on the price per unit, the PSR determined that the crystal methamphetamine was "ice," a term referring to a methamphetamine mixture that is at least 80% pure d-methamphetamine hydrochloride. See U.S.S.G. § 2D1.1(c) n.C. For purposes of determining the base offense level, 1 gram of "ice" is equivalent to 20 kilograms of marijuana. Id. § 2D1.1, cmt. n.10. The PSR did not consider the 5 pounds of methamphetamine kept in storage, but instead found a total of 46 pounds of methamphetamine linked to Mr. Galaz-Felix through the drug ledgers. Forty-six pounds equals roughly 20.8 kilograms, or 20,800 grams.[5] Assuming the methamphetamine was "ice," then the marijuana equivalent is approximately 416,000 kilograms. Only 30,000 kilograms of marijuana equivalent is required to trigger a base offense level of 38. See id. § 2D1.1(c)(1). Even if the methamphetamine was not "ice," and instead was simply a low grade mixture including a smaller percentage of methamphetamine, the amount would

---

[5] 1 lb. = 0.45359 kg, 1kg = 1,000 g.

still be equivalent to approximately 41,000 kilograms of marijuana; again, more than enough to trigger the base offense level of 38.[6]

Mr. Galaz-Felix, while arguing that the district court's factual findings regarding the drug quantity and enhancements are "vague and conclusive," offers little more in response than quotations from the district court's colloquy at the sentencing hearing. In the colloquy, it is clear that the district court considered Mr. Galaz-Felix's arguments, and we are persuaded that the drug amounts described in the drug ledgers could fairly be attributed to him. Post-Booker, a district court may make drug quantity determinations for sentencing purposes based on a preponderance of the evidence. See United States v. Rockey, 449 F.3d 1099, 1104 (10th Cir. 2006). Given our previous determination that there was sufficient evidence connecting Mr. Galaz-Felix to the drug ledgers and the substantial evidence indicating that the drug ledgers described, at a minimum, 46 pounds of some form of methamphetamine, we find that the district court did not commit clear error in calculating the drug quantity.[7]

---

[6] One gram of a mixture or substance containing less than 80% pure methamphetamine is equivalent to 2 kilograms of marijuana. See § 2D1.1 cmt. n.10. Thus, 20,800 grams of such a substance is equivalent to 41,600 kilograms of marijuana (20,800 X 2 = 41,600).

[7] To be sure, there was additional evidence connecting Mr. Galaz-Felix to other amounts of methamphetamine, narcotic mushrooms, and cocaine. We need not determine the sufficiency of this evidence, as the drug quantities linked to Mr. Galaz-Felix through the drug ledgers are more than adequate to trigger the base offense level 38.

II.    The Leader/Organizer Enhancement

To apply the leader/organizer enhancement, the district court must find that: (1) the "criminal activity . . . involved five or more participants or was otherwise extensive," and (2) that the defendant was an "organizer, leader, manager, or supervisor of one or more other participants," or the defendant otherwise "exercised management responsibility over the property, assets or activities of the criminal organization." United States v. Wilfong, 475 F.3d 1214, 1218 (10th Cir. 2007) (citing U.S.S.G. § 3B1.1(a) & cmt. n.2).  In this case, the district court considered two of the intercepted phone conversations in determining that Mr. Galaz-Felix was a leader or organizer.  The first was between Mr. Lopez and Mr. Ramirez, where the two complained that Mr. Galaz-Felix was always trying to collect money from them.  The second was the phone call in which Mr. Galaz-Felix detailed to Mr. Ramirez the quantities of drugs held outstanding by each member of the organization and what each was to pay.  In this same phone call, Mr. Galaz-Felix instructed Mr. Ramirez to collect money from the individual named "Pollo."

Based on these phone calls, and its impression of all the evidence presented, the district court found that Mr. Galaz-Felix was "the watchdog sent by his brother [Genaro], who was the Mexican kingpin in Mexico ," Aplt. App. at 152, and that "Mr. Galaz-Felix was very much one of the main heads, if not the main head," id. at 155.  Although the evidence relied upon by the district court

- 14 -

was sufficient to show that Mr. Galaz-Felix controlled or supervised several individuals, there was also evidence that Mr. Galaz-Felix exercised management responsibility; he kept the organization's records (the drug ledgers) and its money (the wrapped bills). Furthermore, it appears uncontested that the conspiracy involved some thirteen other individuals. There was clearly sufficient evidence to establish the leader/organizer enhancement, and the district court did not commit clear error.

III.    The Firearm Enhancement

U.S.S.G. § 2D1.1(b)(1) instructs that "if a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." Id. § 2D1.1, cmt. n.3. The government bears the initial burden of proving possession of the weapon by a preponderance of the evidence. United States v. Williams, 431 F.3d 1234, 1237 (10th Cir. 2005). "This burden is satisfied when the government demonstrates that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." Id. (internal quotations omitted). The government "need only show that the weapon was found in the same location where drugs or drug paraphernalia [were] stored." United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1186-87 (10th Cir. 2004) (internal quotation marks omitted). If the government meets its burden, then the defendant must show "that it is clearly improbable the weapon

was connected with the offense." Williams, 431 F.3d at 1238.

In this case, it is undisputed that Mr. Galaz-Felix possessed a firearm. After all, he was convicted of illegally possessing a firearm (Count 8). The district court found that the enhancement was appropriate because "at the time [the pistol] was found, it was following a domestic dispute between Mr. Galaz-Felix and his wife. And that hidden area I think the evidence was clear had been used to keep drugs at some point, but there might have been some sort of cleaning out . . . ." Aplt. App. at 151. Indeed, the pistol was found in the same room where the drug ledgers were located. The bundles of money were found in an adjacent room only twenty feet away. The district court also correctly recalled that there was evidence that Mr. Galaz-Felix had, prior to the search, spirited drugs away from his house for safekeeping with Mr. Ramirez. Obviously, there was sufficient evidence that the firearm was found in a location where drugs or drug paraphernalia were stored. The district court did not commit clear error in applying the firearm enhancement.

IV.    The Obstruction of Justice Enhancement

U.S.S.G. § 3C1.1 mandates a two-level increase if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." "Committing, suborning, or attempting to suborn perjury," triggers the obstruction of justice enhancement. Id. § 3C1.1,

- 16 -

cmt. n.4. For purposes of this enhancement, perjury occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993), abrogated on other grounds, United States v. Wells, 519 U.S. 482 (1997). We have said that the district court must "be explicit about which representations by the defendant constitute perjury." United States v. Hawthorne, 316 F.3d 1140, 1146 (10th Cir. 2003).

In this case, the district court concluded that Mr. Galaz-Felix offered perjured testimony at the suppression hearing held on October 17, 2003. The district court stated:

> Now the obstruction. I covered that in my order [denying] the motion to suppress. I found that Mr. Galaz-Felix's recounting of the events during the search, particularly his description of his -- the consent issue, and that's spelled out very clearly in the order, was not credible.
>
> And what I mean by that and what I meant by that was he -- his testimony was perjurious. It didn't happen that way. The evidence was very clear that it did not . . . .
>
> [I]t's spelled out quite clearly what the testimony was and in my order, and I would incorporate that by reference. [H]e was trying to defeat the motion to suppress in a way that was not truthful.

Aplt. App. at 155, 157.

Specifically, the district court found perjurious: (1) Mr. Galaz-Felix's testimony that an officer claimed to have a search "warrant he himself had

signed," II Aplee. Supp. App. at 560, (2) that officers instructed Mr. Galaz-Felix to remain in place, id. at 563, (3) that the officers searched Mr. Galaz-Felix's house without permission, id., and (4) that Mr. Galaz-Felix attempted to get an attorney and asked the officers for permission to do so, id. at 483, 562. The district court explicitly identified this testimony in its order denying the motion to suppress, id. at 484-87, and incorporated these findings relative to the obstruction of justice enhancement.

While Mr. Galaz-Felix argues in this appeal that the officers lied about the facts concerning the search of his house, we stated in our opinion addressing Mr. Galaz-Felix's first appeal that "[the district court] concluded [t]he only credible evidence in the record suggests that Mr. Galaz simply, and voluntarily, agreed to let the officers inside the house. . . . [T]he district court's factual findings and credibility determinations are not clearly erroneous." Galaz-Felix, 160 F.App'x at 790. Mr. Galaz-Felix also argues that the obstruction of justice enhancement was based on his wife's testimony, not his own. Aplt. Br. at 27. This is simply not correct. The record reflects that the district court considered specific testimony offered by Mr. Galaz-Felix and concluded it was perjurious.

The district court based its obstruction of justice enhancement largely on its determinations that Mr. Galaz-Felix was not credible and that his testimony appeared "over the top." II Aplee. Supp. App. at 486. We agree with the district court that Mr. Galaz-Felix's account of the search is "completely inconsistent

with customary police practice." Id. at 487. In any event, given the deference we must afford the district court's credibility determinations, see United States v. Vaziri, 164 F.3d 556, 567 (10th Cir. 1999), we conclude that the district court did not commit clear error in applying the obstruction of justice enhancement.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge