**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANTHONY JOHN COLLINS, a/k/a
"Tony,"

    Defendant - Appellant.

No. 06-5221
(D.C. No. 06-CR-33-01-JHP)
(Northern District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY,** Chief Judge, **HOLLOWAY**, and **GORSUCH** Circuit Judges.

---

## I. INTRODUCTION

On February 13, 2006, Defendant—Appellant, Anthony John Collins, along
with six other defendants, was charged with one count of conspiracy to possess
controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and
(b)(1)(A)(viii), and (c)(2), and five counts of possession with intent to distribute,
and distribution, of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and
(b)(1)(C).

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P.32.1 and 10th
Cir. R. 32.1.

On July 7, 2006, pursuant to a plea agreement, Mr. Collins pled guilty to the conspiracy to possess with intent to distribute controlled substances charge. The plea agreement reserved Mr. Collins's right to appeal the sentence. On November 17, 2006, the district court, after hearing evidence on the matter of the amount of the controlled substance, sentenced Mr. Collins to imprisonment for a term of 168 months, five years' supervised release, a fine of $1500.00, and a $100.00 special assessment. Mr. Collins filed a timely notice of appeal. This court exercises jurisdiction under 28 U.S.C. § 1291.

## II. BACKGROUND

Mr. Collins plead guilty to the conspiracy to possess with the intent to distribute a controlled substance on July 7, 2006. This was Count 1 in the original indictment. The Probation Office prepared a Pre-Sentence Report which stated that Mr. Collins possessed a total of 8.115 kilograms of methamphetamine, 3.82 kilograms of an ephedrine and pseudoephedrine mixture, and 17 milliliters of Phenylacetone, resulting in a base offense level of 38. Appellant's Counsel objected and stated that the evidence of drug quantity warranted only a base offense level of 34. The court subsequently scheduled an evidentiary hearing.

On September 29, 2006, the government presented a single witness, Angela Sue Ensminger (formerly Angela Sue Nolen), the former wife of co-conspirator Gary Nolen, and a co-conspirator herself. Ms. Ensminger testified that Mr. Collins began making methamphetamine with Gary Nolen in 1999. She also

testified that she found a rural residence where Nolen and Collins would manufacture the methamphetamine. Ms. Ensminger aided further in the process of making methamphetamine by purchasing packages of pseudoephedrine pills and then retrieving the finished methamphetamine after its completion. At the evidentiary hearing, Ms. Ensminger also testified that she picked up the finished methamphetamine in bags containing "a pound or two" of the product every week beginning in January of 2001 and ending in June of that year.

Ms. Ensminger further testified that the methamphetamine manufacturing continued in 2002 although at a different residence. She also stated that Mr. Collins manufactured methamphetamine with another co-conspirator, Paul Davis. Additionally, Ms. Ensminger stated that Mr. Collins described an incident in Boynton, Oklahoma where he was present at the time of a police raid on a methamphetamine operation. Mr. Collins had a conversation with his attorney, with Ms. Ensminger present, where Mr. Collins claimed that the materials seized by the police belonged to him.

Appellant's Counsel cross examined Ms. Ensminger whereupon she admitted being a daily methamphetamine user. Appellant's counsel did not present any witnesses but did enter into evidence the grand jury transcript of Gary Nolen. Closing arguments were then made and the court did not make a ruling at that time.

On October 5, 2006, the court held a proceeding in which it stated that at

that point in time, "the Court has absolutely no evidence on which to accurately estimate the drug quantities involved in this conspiracy." Oct. 5 Tr. p. 2-3. The court did not sentence Mr. Collins to a term of imprisonment commensurate with a base offense level of 31, for which Appellant's Counsel initially argued. The court announced that it would hold another evidentiary hearing on the matter of drug weight. Appellant's Counsel objected to the "re-do" of the evidentiary hearing and to the court raising the issue *sua sponte*.

On October 24, 2006, the court held the next evidentiary hearing. The government called Detective John Singer, a member of the Claremore, Oklahoma, Police Department, who was a case officer on this matter. Detective Singer testified that he was familiar with the facts of the conspiracy to which Mr. Collins pled guilty. Detective Singer indicated that in his various opportunities to debrief Ms. Ensminger, "she picked up one to two packages weighing approximately one to two pounds" of methamphetamine. Oct. 24 Tr. at 7. Detective Singer also testified that based on the conversion that one kilogram is equal to 2.2 pounds, a conservative estimate put the total drug weight at one kilogram per week for eight weeks–or eight kilograms over that period of time in 2001. *Id.* Next, Detective Singer discussed the incident on October 17, 2002 where a search was conducted at a home in Boynton, Muskogee County, Oklahoma. Detective Singer stated that over 60 substances were found and submitted for a lab analysis. *Id.* at 8. Detective Singer stated that a number of them tested positive for

methamphetamine, pseudoephedrine, and both substances. *Id.* Detective Singer noted in particular two weights; first, one substance weighing 2.9 kilograms tested positive for pseudoephedrine and second, another substance weighing .9 kilograms tested positive for pseudoephedrine. *Id.* In total, Mr. Collins was allegedly responsible for 3.8 kilograms of pseudoephedrine in these two incidents.

The Government then asked Detective Singer if he was aware of a purchase of pseudoephedrine made by Mr. Collins and Ms. Ensminger in Oklahoma City in 2001. Detective Singer answered affirmatively and testified that the purchase was for $17,000 and involved ten cases of pseudoephedrine. Oct. 24 Tr. at 9. The weight of those cases, Detective Singer stated, was 31 kilograms once separated from the packaging holding the pseudoephedrine. *Id.* at 10. When asked for the total weight of the October 2002 search and the 2001 Oklahoma City purchase, Detective Singer testified that the amount would be more than six kilograms of pseudoephedrine. *Id.*

As the hearing progressed, the district court and Mr. Collins's counsel had a dialogue in which counsel stated that the Boynton conduct created 2.72 kilograms of methamphetamine and was a "verifiable amount" for which Mr. Collins would take responsibility. Oct. 24 Tr. at 26-27. The district court construed that as a minimum amount. *Id.* at 27. The government then provided closing remarks and summarized that a preponderance of the evidence shows that Mr. Collins was responsible for the manufacture of eight kilograms of

methamphetamine from the Boynton residence, and approximately six kilograms of pseudoephedrine from the combination of the 2001 Oklahoma City purchase and the October 17, 2002 seizure.

On November 7, 2006, the court held the last sentencing hearing in this case. The court found that the drug quantities alleged were "an extremely conservative estimate of the drug quantities actually involved in the conspiracy." Nov. 7 Tr. p. 7. The court also stated that if it were to disregard the amount of methamphetamine produced, Mr. Collins's base offense level would still be 38 based solely on the pseudoephedrine amount. *Id.* at 5. The court stated that this was in part due to Mr. Collins's admission in the plea agreement that he purchased ten cases of pseudoephedrine. *Id.* at 5-6; See U.S.S.G. § 2B1.1, note 10; U.S.S.G. § 2D1.1. The court then sentenced Mr. Collins to a term of incarceration totaling 228 months or 19 years.

## III. DISCUSSION

Mr. Collins presents three arguments for remanding his sentence. First, Mr. Collins argues that the district court abused its discretion and violated his due process rights by allowing the government to "re-do" their case against him. Second, Mr. Collins argues that even considering the evidence presented at both sentencing hearings, there was an insufficient basis to show the requisite drug weight warranting a base offense level of 38. Finally, Mr. Collins argues that the

sentence handed down by the district court is procedurally and substantively unreasonable and therefore in violation of *United States v. Booker* and its progeny.

*1. Issue Concerning Abuse of Discretion at the Sentencing Hearing*

Mr. Collins argues that the district court violated his due process rights by allowing the government to "re-do" their case and re-present additional witnesses. Mr. Collins claims that the court's conduct improperly provided the government the proverbial "second bite at the apple." Essentially, Appellant's argument amounts to a claim that the district court abused its discretion by continuing the sentencing hearing in order to hear more evidence. Mr. Collins adequately objected to the continuation of the September 29th sentencing hearing thereby warranting our review for alleged abuse of discretion. *See United States v. Gines*, 964 F.2d 972, 977 (10th Cir. 1992); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1535(10th Cir. 1991) (holding that when an evidentiary hearing is not mandatory, such a hearing is within its discretion and is reviewable for abuse of discretion); *United States v. Meyer*, 157 F.3d 1067 (7th Cir.1998) (holding that challenges to a district court's reopening an evidentiary hearing are reviewed for abuse of discretion).

A sentencing court must fashion a sentence that is both procedurally and substantively reasonable by properly calculating the base offense level and

adequately explaining its reasoning for handing down a particular sentence. *See Gall v. United States*, 128 S. Ct. 586, 594 ("It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."); *United States v. Verdin-Garcia*, --- F.3d ----, 2008 WL 435495, *8 (10th Cir. 2008) (holding that reasonableness in sentencing has two components–procedural and substantive–which require an investigation into the process resulting in the sentence and consideration of the factors contained in § 3553(a)); *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir.2007) (holding that § 3553(c) requires a court to provide only a general statement of the reasons for giving a within guidelines sentence); *Id.* at 1200 (holding that § 3553(c)(2) requires a court to provide the specific reason for a sentence falling outside the guidelines range).

A sentencing court is tasked with properly calculating the base offense level because the sentence handed down must be procedurally reasonable. *See United States v. Todd*, --- F.3d ----, 2008 WL 363738, *5 (10th Cir. 2008) (citing *Gall v. United States*, --- U.S. ----, ----, 128 S.Ct. 586 (2007); *see also United States v. Kristl*, 437 F.3d 1050, 1054-55 (10th Cir.2006). As in the instant case, when a defendant objects to a portion of the PSR, the court may hold an evidentiary hearing to rule on the dispute in order to ascertain the appropriate

base offense level and fashion a procedurally reasonable sentence. Fed. Crim. R. Proc. 32(i)(3)(B).

In the instant case, the sentencing court heard testimony from Ms. Ensminger, which it found to be credible, but in the end not very helpful in determining the amount of drugs involved. The sentencing court noted in its October 5th proceeding that it was left with a dilemma because it did not have enough information in order to determine the facts of the case and rule on the issue. This epistemological void led the court to conclude that the sentencing hearing should be continued in order for more evidence to be presented. The court explicitly stated at the same October 5th hearing that Mr. Collins was also welcome to present any additional testimony or evidence in support of his case.

Although Mr. Collins couches this argument as one involving his due process rights, the crux of this issue is whether the district court abused its discretion in deciding to hear more evidence on the issue of drug weight. In the instant case, the sentencing court stated in the October 5th hearing that it did not have the information necessary to make a ruling on the issue of drug weight. It did not say that the evidence was conclusive that the particular drug weight did not exist; rather it stated that the information presented was in the end not very clear. The continuation of the evidentiary hearing focused on clarifying the evidence and providing the district court with a better view of the facts and circumstances of Mr. Collins's case. A district court is entitled to re-open an

evidentiary hearing in order to ascertain the proper facts in a given case. *See United States v. James*, 78 F.3d 851, 859 (3rd Cir. 1996) (Stapleton, J., concurring) (stating that a district court has discretion to reopen an evidentiary hearing).

The instant case could be confused with a very different circumstance where reopening the evidentiary hearing could be precluded. In a case where a sentence was appealed and remanded back to the district court, this court has ruled that an appellate court has the authority to prevent the district court from re-opening the hearing thereby requiring the district court to sentence the defendant based on the original hearing and evidence contained therein. *United States v. Campbell*, 372 F.3d 1179, 1182-83 (10th Cir. 2004); *see United States v. Keifer*, 198 F.3c 798, 801 (10th Cir. 1999) (holding that the general rule is that upon remand, the sentencing hearing at the district court proceeds *de novo*). The authority of the appellate court to limit supplementation of the sentencing hearing in certain circumstances highlights the notion of finality that exists after the district court has fashioned a sentence. However, the instant case is readily distinguishable. The additional evidence proffered in the instant case came before a sentence was handed down and before an appeal to this court. Thus, there are no factors here that would urge us to remand this sentence back to the district court with an instruction to limit sentencing to the record from the first hearing alone. It is more accurate to look at the various proceedings below as all

part of a single sentencing hearing that focused on determining the correct drug weight involved. We feel there was no improper supplementation of the record, particularly since both parties were allowed to present further evidence. Furthermore, there was no finality to the proceeding until the close of the November 7, 2006 hearing where the district court defined the sentence for Mr. Collins.

Mr. Collins argues that *Eason v. United States*, 281 F.2d 818 (9th Cir. 1960), requires a remand in this case. *Eason* involved a jury trial in the district court where the defendant moved to reopen the case so that he might testify on a point concerning a question presented by the jury after the case had been submitted. 281 F.2d at 822. The court denied the defendant's request to reopen the case for him to testify. *Id.* Appellant argues that this case is on point for the instant appeal. We disagree. This case is readily distinguishable on the basis that the proceeding in *Eason* was a jury trial where the defendant's guilt or innocence was at issue, as opposed to a sentence hearing where the defendant has already pled guilty. There are tangible concerns regarding prejudice to other parties, jury confusion, and the potential for the new evidence to be overemphasized. *Id.*

Appellant argues that fundamental fairness requires a reversal of the district court's procedure. However, it is clear from the October 5th transcript that the court not only did not preclude Appellant from presenting additional evidence, but encouraged him to do so. Thus, there was no prejudice to either party–both

were allowed to present evidence on the matter at issue. Furthermore, the district court continued the sentencing hearing in an effort to achieve the goal of handing down a procedurally reasonable sentence by arriving at the proper base offense level. The district court, in pursuit of its obligation to provide a procedurally reasonable sentence, has an obligation to the process of finding facts by a preponderance of the evidence and being correct upon handing down the particular sentence. If, as it was in the instant case, it appears to the district court that the information presented at the hearing so far was unhelpful in illuminating the issue, then a continuance may be justified. *See United States v. Gill*, --- F.3d ----, 2008 WL 190789, * 16 (8th Cir. 2008); *United States v. Davis*, 194 Fed.Appx. 716, 717 (11th Cir. 2006). Here it was within the district court's discretion to continue the sentencing hearing with the hope of ascertaining a better understanding of the circumstances of the case so as to appropriately rule on the disputed portion of the PSR and properly calculate the appropriate base offense level. We cannot say that the district court abused its discretion in the instant case by allowing another hearing where both parties could present additional evidence.

*2. Sufficiency of the Evidence*

Mr. Collins argues that the evidence presented at the sentencing hearings was insufficient for the sentencing court to find the drug amount warranting a base offense level of 38. "We review a sentencing court's determination of the

quantity of drugs attributable to a defendant for clear error." *United States v. Morales*, 108 F.3d 1213, 1225 (10th Cir.1997). "In a controlled substances case, a defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of [a conspiracy], all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *United States v. Lauder*, 409 F.3d 1254, 1267 (10th Cir.2005) (citing U.S.S.G. § 1B1.3, cmt. n. 2). It should also be noted that a challenge to the sufficiency of the evidence is also one that challenges the procedural reasonableness of the sentence. *See United States v. Galaz-Felix*, 221 Fed. Appx. 790, 795 (10th Cir. 2007); *United States v. Kristl*, 437 F.3d 1050, 1166 (10th Cir. 2006) (per curiam). The procedural reasonableness claim will be addressed in more detail below.

As noted above, Mr. Collins pled guilty to a conspiracy charge and under *Lauder*, he is responsible for the reasonablely foreseeable amounts of drugs produced within the scope of the criminal activity in which he jointly participated. *Lauder*, 409 F.3d 1254, 1267. In the November 7th hearing, the district court stated that regardless of the amount of methamphetamine at issue, the marijuana equivalency table would require a base offense level of 38 based solely on the pseudoephedrine from either the Oklahoma City purchase in 2001 or the October, 17th seizure. This is because one gram of pseudoephedrine is treated as ten kilograms of marijuana. U.S.S.G. § 2D1.1(c). A three kilogram amount of

pseudoephedrine would be the equivalent of 30,000 kilograms of marijuana which results in a base offense level of 38. *Id.* In the instant case, the district court found that there was a preponderance of evidence that Mr. Collins was responsible for the pseudoephedrine seized in the October 17, 2002 search of the Boynton residence. This amount totaled approximately 3.8 kilograms of pseudoephedrine. Furthermore, Mr. Collins admitted in his plea agreement that he, along with Ms. Ensminger, purchased ten cases of pseudoephedrine in Oklahoma City in 2001 which was estimated by Detective Singer to constitute 3.1 kilograms of pseudoephedrine. Together, these incidents justify a finding that Mr. Collins was responsible for 6.9 kilograms of pseudoephedrine whereas only three kilograms would be necessary to warrant a base offense level of 38.

In reviewing the evidence presented at the sentencing hearing and the admission in the plea agreement, we find that the evidence resulting in a base offense level of 38 was sufficient.

*3. Procedural Reasonableness*

Mr. Collins argues that his sentence is unreasonable in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). Specifically, Mr. Collins argues that his sentence is (1) procedurally unreasonable because the drug amount was not shown and therefore the base offense level was improperly calculated and (2) substantively unreasonable because his sentence of 19 years was plainly unreasonable.

We largely addressed the substance of the procedural reasonableness argument above in determining the sufficiency of the evidence to show the drug amount warranting a base offense level of 38. "In setting a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range and apply the factors set forth in § 3553(a)." *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007). Since we found that the district court had sufficient evidence to calculate a base offense level of 38, Mr. Collins's sentence was properly calculated and therefore procedurally reasonable.

*4. Substantive Reasonableness*

Finally, Mr. Collins argues that his 19 year sentence is substantively unreasonable and should therefore be remanded. Mr. Collins contends that in light of the § 3553(a) factors and his particular circumstances, an outside the guidelines sentence would be reasonable. Appellant does not specifically lay out what specific facts about his individual circumstance warrant imposition of an outside the guidelines sentence. However, relevant facts are that he was a methamphetamine addict who used the drug three times a week for fourteen years, has never received drug rehabilitation, and that this criminal conduct coincided with his acquaintance with Gary Nolen. Although § 3553(a)(D)(2) enumerates the need for considering an individual's medical and treatment needs in considering sentencing, Mr. Collins's addiction to illegal narcotics is all too familiar. Addiction, although quite serious, is not sufficient by itself to make a

-15-

within the guidelines sentence plainly unreasonable.  Furthermore, that Mr. Collins chose to associate with Mr. Nolen is not a fact that would warrant an outside the guidelines sentence.  We cannot say that the within guidelines sentence is plainly unreasonable.

## IV.  CONCLUSION

We AFFIRM the sentence handed down by the district court.  The sentence was properly calculated and was not plainly unreasonable.  By continuing the sentencing hearing to acquire additional evidence, the district court upheld its duty to determine the appropriate base offense level and did not abuse its discretion.  In light of the testimony, the district court had sufficient evidence to warrant a base offense level of 38.

IT IS SO ORDERED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge