**F I L E D**
**December 19, 2005**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ARTHUR WILLIAMS, JR.,

      Defendant-Appellant.

No. 04-3180

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 03-CR-40112-01-SAC)**

---

Kirk C. Redmond, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, and Ronald E. Wurtz, Assistant Federal Public Defender, on the briefs), Topeka Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **LUCERO**, **SEYMOUR** and **HOLLOWAY**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Arthur Williams, Jr., entered a plea of guilty to one count of distribution of a mixture containing a detectable quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  At sentencing, Mr. Williams' guideline range was enhanced by two offense levels pursuant to U.S.S.G. § 2D1.1(b)(1) on the basis of the district court's finding, by a preponderance of the evidence, that Mr. Williams possessed a dangerous weapon (a Sig Sauer 9mm pistol) in connection with his drug trafficking offense.  Incorporating the two-level enhancement, the court determined Mr. Williams' guideline range was 70 to 87 months and sentenced him to 70 months incarceration.  Mr. Williams advances two theories to support his contention that he was erroneously sentenced.  He first claims the record evidence is insufficient to support increasing his sentence two offense levels for possession of a firearm pursuant to § 2D1.1(b)(1).  He also maintains the district court's calculation of his sentence based on facts neither admitted by him nor proven to a jury beyond a reasonable doubt violates the Sixth Amendment.  For the reasons stated below, we affirm.

## I

Mr. Williams was charged in a three count indictment on September 19, 2003.  Each count asserted that he knowingly and intentionally distributed a mixture or substance containing a detectable amount of cocaine base on three

separate dates in September 2003. Mr. Williams subsequently entered a guilty plea to the distribution offense that occurred on September 2, 2003 (Count 1), in exchange for the government's agreement to dismiss Counts 2 and 3. *See* Rec., vol. I at Tab 23 (Petition to Enter Guilty Plea and Order Entering Plea). The parties stipulated that the following facts supported Mr. Williams' plea:

> On September 2, 2003, a confidential informant (CI) who was working with officers of the Shawnee County Sheriff's Department contacted the defendant by telephone. During their conversation, the defendant agreed to sell the (CI) six rocks of cocaine for $100.00. Thereafter, at the defendant's direction, the CI went to the defendant's residence in Topeka, Kansas, where the CI purchased six small rocks of cocaine for $100.00 as previously agreed. The rocks were later tested by the DEA and found to contain cocaine base.

*Id.*

In anticipation of Mr. Williams' sentencing, the probation office prepared a presentence report (PSR). According to the PSR, the quantity of cocaine base distributed by Mr. Williams on September 2, 2003, was .97 grams. On the basis of information provided by a confidential informant (CI), the PSR determined for relevant conduct purposes that Mr. Williams had distributed 1.22 grams of cocaine base on September 8; 1.3 grams of cocaine base on September 19, and 1.06 grams of cocaine base on October 1, 2003. In addition, the police had discovered 1.64 grams of cocaine in Mr. Williams' apartment and car when they executed a search warrant on October 14, 2003. A digital scale and a loaded 9mm Sig Sauer pistol were also found in Mr. Williams' living room.

Based on the drug quantities enumerated above, the PSR calculated Mr. Williams' base offense level at 26. It recommended a two-level increase for possession of the firearm, *see* U.S.S.G. § 2D1.1(b)(1), and a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, resulting in a total offense level of 25. When combined with Mr. Williams' criminal history category of III, this offense level yielded a sentencing range of 70 to 87 months incarceration.

Mr. Williams objected to the recommended two-level increase for possession of the firearm. He admitted possession but argued that the enhancement did not apply because "the gun was not truly proximate to the drugs" as no drugs were located in the room in which the gun was found; the small amount of drugs recovered at his residence "belies the likelihood they were being held for sale"; and the evidence showed he possessed the gun solely for protection and in response to a robbery that occurred at his home on July 13, 2003. Rec., vol. I at Tab 27 (Objection to Presentence Report and Motion for Departure). The district court overruled Mr. Williams' objection, finding both that the government had established "a temporal and spatial relationship between the weapon, the drug trafficking activity, and the defendant," and that Mr. Williams did not satisfy his burden of showing it was "clearly improbable" the weapon was related to his drug offense. *See id.* at Tab 28 (Ruling on Objection to Presentence Report); *id.*, vol. III at 13 (Sentencing Transcript). The district court adopted the recommendations

of the presentence report and sentenced Mr. Williams at the bottom of the guideline range to 70 months imprisonment.

## II

Mr. Williams first contends the court erred by increasing his offense level for possession of the firearm under § 2D1.1(b)(1), arguing he presented evidence that it was clearly improbable the possession of the pistol was connected to his offense of conviction. "We review a district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Brown*, 314 F.3d 1216, 1222 (10th Cir. 2003). Reversal is merited only if "the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Shewmaker*, 936 F.2d 1124, 1130 (10th Cir. 1991) (citations omitted).

Section 2D1.1(b)(1) concisely instructs that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1). The commentary to § 2D1.1 states, "[t]he adjustment should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected to the offense." U.S.S.G. § 2D1.1, cmt. n.3 (emphasis added).

The government bears the initial burden of proving possession of the weapon by a preponderance of the evidence. *United States v. Pompey*, 264 F.3d 1176, 1180 (10th Cir. 2001). This burden is satisfied when the government demonstrates that "a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Id.* (quoting *United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993)). Indeed, "the government need only show that the weapon was found in the same location where drugs or drug paraphernalia are stored." *United States v. Zavalza-Rodriguez*, 379 F3d 1182, 1186-87 (10th Cir. 2004) (quotation omitted); *Roederer*, 11 F.3d at 982-83 ("the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred"). This is so because "[p]ossession in the context of § 2D1.1(b)(1) is . . . possession by proximity-constructive possession." *Zavalza-Rodriguez*, 379 F.3d at 1187. If the government meets this initial burden, "the burden shifts to the defendant to show that it is clearly improbable the weapon was connected with the offense." *Pompey*, 264 F.3d at 1181 (citation and internal quotations omitted).

Mr. Williams expressly conceded he possessed the firearm. *See* Aplt. Br. at 9 ("Mr. Williams admitted to police that he had possessed the firearm for a couple of months"); Rec., vol. I at Tab 23 ("as Mr. Williams told the police at the time, he had the gun because he had been robbed"); *id.*, vol. III at 7 ("We don't dispute

where the gun was found, we don't dispute the facts around the search of October 14th"); *id.* at 8 ("He had a gun in his apartment"). Moreover, because Mr. Williams did not dispute the 9mm pistol was "located in the living room on the couch with a pillow covering the pistol," *id.* at 8, a "digital scale was located on the living room floor on the right hand side of a chair," *id.*, and "[f]our rocks of crack cocaine individually wrapped . . . [were] found in plain view on the kitchen table," *id.*, the government demonstrated that the 9mm pistol "was found in the same location where drugs or drug paraphernalia are stored." *Zavalza-Rodriguez*, 379 F.3d at 1186-87. This established possession and proximity, and the burden shifted to Mr. Williams to demonstrate it was "clearly improbable" that the firearm was connected to his drug trafficking offense.

Mr. Williams points out it is undisputed he was robbed and beaten by unknown individuals in his apartment in July 2003. He further contends he obtained the firearm as a result of that incident and, thus, possessed the pistol merely for protection. The government does not contest Mr. Williams' claim that he possessed the gun for protection. Instead, it argues that because Mr. Williams pled guilty to cocaine trafficking and had previously been robbed of drugs, he carried the gun for protection *of both his person and his drug dealing enterprise*. Mr. Williams neither claims that he did not possess the gun during the commission of the crime to which he pled guilty nor that his need for protection

was unrelated to his drug trafficking activities. We therefore agree with the district court that Mr. Williams' assertions on their face are simply insufficient to meet the burden of "clear improbability," and that he possessed the gun within the meaning of § 2D1.1(b)(1).

## III

For the first time on appeal, Mr. Williams relied on *Blakely v. Washington*, 542 U.S. 296 (2004), to contend his sentence violates the Sixth Amendment, because a jury did not find, nor did he admit, facts that would support the two-level firearm possession enhancement.[1] *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005). After briefing was completed in this case, the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005). The Court extended its holding in *Blakely* to the federal

---

[1]As explained above, the PSR determined that Mr. Williams' base offense level was 25 by relying on the sum of drug quantities (6.19 grams) he was responsible for distributing on five separate dates. Because he only admitted in his guilty plea to distribution of an unspecified quantity of cocaine base on September 2, 2003, Mr. Williams contended in his opening brief that the maximum offense level the district court could constitutionally impose based on the drug quantity involved in his offense conduct was 12. *See* U.S.S.G. § 2D1.1(c)(14) (base offense level 12 applies when offense involves "[l]ess than 250 MG of cocaine base"). During oral argument, however, Mr. Williams' counsel conceded the facts which led to the court's finding of drug quantity were undisputed and stated he therefore was no longer raising Sixth Amendment error as to that judge-found fact.

sentencing guidelines, holding that the Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [to] be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 755-56. To remedy the constitutional infirmity of the guidelines, *Booker* invalidated their mandatory nature, requiring the district court to consult them in an advisory fashion. *Id.* at 756-57 (severing and excising 18 U.S.C. §§ 3553(b)(1), 3742(e)). Although Mr. Williams has not sought supplemental briefing to address *Booker*, raising the Sixth Amendment issue pursuant to *Blakely* in his opening brief is sufficient to invoke *Booker*. *See United States v. Trujillo-Terrazas*, 405 F.3d 814, 817 (10th Cir. 2005); *see also Booker*, 125 S. Ct. at 769 (stating that "both [its] Sixth Amendment holding and [its] remedial interpretation of the Sentencing Act" must be applied to all cases on direct review). Consequently, we will apply the Sixth Amendment analysis of *Booker* to this case.

Because Mr. Williams did not object to the firearm enhancement in the district court on the basis of the Sixth Amendment, we review only for plain error. *See United States v. Yazzie*, 407 F.3d 1139, 1144 (10th Cir. 2005) (objecting on sufficiency of evidence grounds does not preserve claimed *Booker* errors); *see also Trujillo-Terrazas*, 405 F.3d at 818; *United States v. Dazey*, 403

F.3d 1147, 1173-74 (10th Cir. 2005).  To establish plain error, Mr. Williams

> must demonstrate that the district court (1) committed error, (2) that
> the error was plain, and (3) that the plain error affected his
> substantial rights.  If all these conditions are met, a court reviewing
> the error may exercise discretion to correct it if the error seriously
> affects the fairness, integrity, or public reputation of judicial
> proceedings.

*Dazey*, 403 F.3d at 1174 (citations and quotation marks omitted).

Contrary to Mr. Williams' argument, the district court's sentence does not

run afoul of his Sixth Amendment rights.  Although the court's finding that Mr.

Williams' possessed a firearm increased his offense level, that finding did not

result in "a sentence exceeding the [statutory] maximum authorized by the facts

established by [Mr. Williams'] plea of guilty" to the underlying drug count.

*Booker*, 125 S. Ct. at 756; *see also Yazzie*, 407 F.3d at 1144 ("*Booker* made clear

that it is the actual sentence, not the sentencing range, that must not be increased

based upon judge-found facts in order to violate the Sixth Amendment.").  The

guideline range incorporating the § 2D1.1(b)(1) enhancement for possession of a

firearm was 70 to 87 months.  If that enhancement were omitted from the court's

guidelines computations, causing a reduction in Mr. Williams' offense level from

25 to 23, the applicable sentencing range would be 50 to 71 months.  *See* U.S.S.G.

Ch. 5, Pt. A.  Mr. Williams received a 70-month sentence - a sentence that was

within both the 70 to 87-month range and the lesser 50 to 71-month range.  In

other words, the district court's finding that Mr. Williams possessed a firearm

-10-

"did not increase his sentence beyond the maximum authorized by the facts" admitted by him in his plea agreement. *Dazey*, 403 F.3d at 1174. Accordingly, the district court did not violate Mr. Williams' Sixth Amendment rights under *Booker*. *See United States v. Payton*, 405 F.3d 1168, 1173 (10th Cir. 2005) (no constitutional error when judicially found facts have no constitutionally significant impact on defendant's sentence).

Nevertheless, the district court committed non-constitutional error in treating the guidelines as mandatory, rather than advisory. *See Yazzie*, 407 F.3d at 1146. Mr. Williams has therefore established the first two prongs of the plain error test. But he has not met his burden of establishing the test's remaining requirements. We need not decide whether Mr. Williams has established the third prong because even if he has, he has not met the "demanding" burden of establishing that the district court's non-constitutional error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 736; *see also Yazzie*, 407 F.3d at 1146. "A party that fails to raise an argument in the district court must show that allowing a non-constitutional error to stand would be particularly egregious and would constitute a miscarriage of justice." *Dazey*, 403 F.3d 1178 (citations and internal quotation marks omitted); *see also Yazzie*, 407 F.3d at 1146 ("we will not notice a non-constitutional error, such as the one in the case before us, unless it is both

particularly egregious and our failure to notice the error would result in a miscarriage of justice" (citations and internal quotation marks omitted)). We have recognized that in most cases involving non-constitutional *Booker* error the defendant will be unable to satisfy the final prong. *See Trujillo-Terrazas*, 405 F.3d at 820-21 (acknowledging difficulty in establishing final prong in cases involving non-constitutional *Booker* error but finding that defendant had satisfied it). Mr. Williams has not met this high standard.

Mr. Williams received a sentence within the national norm as established by the guidelines, and there is no evidence supporting a lower sentence. *See Gonzalez-Huerta*, 403 F.3d at 738-39 (considering in final prong analysis whether defendant received a sentence within guidelines/national norm and whether record supported a lower sentence). Although the district court sentenced Mr. Williams at the bottom of the guidelines range, there is nothing in the record to indicate the court was unhappy with the sentence or that it would have been inclined to impose a lower sentence had it realized it had the discretion to do so. *United States v. Sierra-Castillo*, 405 F.3d 932, 942 (10th Cir. 2005) (comments of sympathy towards a defendant's circumstances do not in themselves demonstrate that "the sentence implicates the kind of fundamental fairness issues necessary to satisfy the fourth plain-error prong").

> Even if a defendant can demonstrate that the district court felt
> particular sympathy for him, and might impose a lesser sentence on

remand, failing to correct [non-constitutional Booker error] would not impugn the fairness, integrity, and public reputation of judicial proceedings. Indeed, a remand might do quite the opposite because another defendant convicted of an identical crime under identical circumstances could receive a different sentence from a less sympathetic judge.

*Trujillo-Terrazas*, 405 F.3d at 821. Because objective consideration of the factors listed in 18 U.S.C. § 3553(a) does not counsel that a lower sentence be imposed, the record on appeal simply does not support the conclusion that this case is one of the rare non-constitutional *Booker* error cases requiring resentencing.

For the foregoing reasons, we **AFFIRM**.