**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

——————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CESAR MEDINA-CABUTO,

Defendant-Appellant.

No. 06-4267
(D.Ct. No. 2:06-CR-00019-PGC)
(D. Utah)

——————————————

**ORDER AND JUDGMENT**[*]

————————————————

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior
Circuit Judges.

————————————————

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Appellant Cesar Medina-Cabuto pled guilty to possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He now appeals his 168-month sentence, claiming the district court's sentence enhancement for firearm possession under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2D1.1 violated *United States v. Booker*, 543 U.S. 220 (2005), and that this court should not, on appellate review, apply a presumption of reasonableness to sentences, like his, which are within the advisory Guidelines range. We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and affirm Mr. Medina-Cabuto's sentence.

I. Factual and Procedural Background

Evidence presented to the district court included information that from April through August 2005 agents with a narcotics strike force were investigating an individual they believed was distributing large quantities of methamphetamine in the Ogden, Utah, area. As part of that investigation, agents also began conducting surveillance of two other individuals, Victor Rios-Chavez and Jaime Olivarria-Lora. An informant advised agents that Mr. Rios-Chavez and Mr. Olivarria-Lora had received a large shipment of methamphetamine which they were transporting from California to West Valley City, Utah, where they intended to dilute the drug and sell it. Evidence also later disclosed the defendant, Mr.

Medina-Cabuto, traveled from California to Utah with Mr. Rios-Chavez and Mr. Olivarria-Lora.

Agents performed surveillance on a residence where the informant believed the methamphetamine would be delivered. During their surveillance, agents witnessed Mr. Rios-Chavez arrive; later, Mr. Olivarria-Lora and Mr. Medina-Cabuto arrived and carried multiple heavy items into the house. The informant then helped purchase items needed to cut the methamphetamine; assisting him was Rafael Solis-Medina, an individual described as the "muscle" of the operation, who was known to use force to collect money for the drug operation.

Agents then executed a search warrant on the residence, where they found Mr. Medina-Cabuto and Mr. Olivarria-Lora in the garage, together with thirteen pounds of methamphetamine drying on a horizontal glass window.[1] In the garage they also discovered various items used to "cut" methamphetamine, including MSM, a fan, a hot plate, rubber gloves, towels, denatured alcohol, scales, bags, and a knife with residue on it. The other individuals were found in the house; in

_____

[1] While the presentence report seems to contradictorily state that Mr. "Medina" was found both in the garage and in the house, a review of the record clarifies that both Mr. Medina-Cabuto and Mr. Solis-Medina were, in that instance, referred to as Mr. "Medina," but that Mr. Medina-Cabuto was found in the garage and Mr. Solis-Medina was found in the living room of the house.

addition, in one upstairs bedroom, agents located documents in the names of both Mr. Olivarria-Lora and Mr. Rios-Chavez, as well as three loaded handguns and ammunition on a shelf in a closet. An additional fifty rounds of ammunition for one of the firearms were discovered in a closet in the main hallway of the house. In the laundry room, agents also recovered a heat-sealed bag containing a large amount of methamphetamine. After conducting a lab analysis, the government concluded the methamphetamine found in the garage totaled 296.4 grams and the methamphetamine found in the laundry room totaled 303.8 grams.

Following his indictment for possession of methamphetamine with intent to distribute, Mr. Medina-Cabuto entered into a written plea agreement in which he agreed to plead guilty to possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). In exchange for his guilty plea, the government agreed not to charge him with a gun offense or to seek an indictment for illegal reentry and also agreed to recommend a sentence at the low end of the Guidelines sentencing range. In his statement in advance of his guilty plea, Mr. Medina-Cabuto stipulated that during the search of the residence agents recovered approximately 600 grams of methamphetamine which belonged to him and his co-defendants and that they intended to sell the methamphetamine; he further admitted that, "either [as] a principal or as an

accomplice," he "knowingly and intentionally possessed 500 grams or more of ... methamphetamine with intent to distribute." At his plea hearing, Mr. Medina-Cabuto pled guilty, again acknowledging the 600 grams of methamphetamine belonged to him and his co-defendants and that they intended to sell or distribute it.

Following the district court's acceptance of Mr. Medina-Cabuto's guilty plea, a probation officer prepared a presentence report, calculating his base offense level at 36 based on the stipulated drug type and amount of at least 500 grams but less than 1.5 kilograms of methamphetamine. The probation officer also recommended a two-level increase in the offense level for possession of a dangerous weapon under U.S.S.G. § 2D1.1.(b)(1), which in this case involved recovery of firearms; he also recommended a three-level reduction in the offense level for Mr. Medina-Cabuto's acceptance of responsibility. With a total offense level of 35 and a criminal history category of I, the resulting advisory Guidelines range calculation totaled 168 to 210 months imprisonment. The probation officer also pointed out ten years was the statutory minimum sentence for Mr. Medina-Cabuto's offense.

Thereafter, Mr. Medina-Cabuto filed objections to the presentence report,

which included an argument against the two-level offense increase for possession of a firearm, based on his argument he: 1) arrived at the Utah residence only three hours before the search; 2) was downstairs (in the garage) when agents found the guns in the upstairs bedroom of another defendant; and 3) was unaware of the presence of firearms in the home. He also argued against the Guidelines range of 168 to 210 months imprisonment, stating the minimum statutory sentence of ten years was the proper sentence under 18 U.S.C. § 3553.

At the sentencing hearing Mr. Medina-Cabuto again objected to application of the firearm enhancement, arguing in part that he should not be tagged with a gun located in a house he entered only a couple of hours earlier. In turn, the government explained § 2D1.1 only requires a showing of mere proximity of the guns to the drugs and a reasonable foreseeability firearms would be involved or possessed by others in distribution of those drugs, regardless of whether a conspiracy is charged.[2]

_____

[2] The government further explained the presence of a gun would be foreseeable to Mr. Medina-Cabuto based on: 1) the large quantity and level of drug distribution, which in this case involved drugs valued at $300,000 in their uncut form; 2) a reasonable presumption that those involved in the distribution scheme would protect their drug assets by arming themselves; 3) the fact Mr. Solis-Medina was present at the house for protection of the drug operation; 4) the fact Mr. Medina-Cabuto was involved with the large California drug cartel supplying the drugs found; 5) Mr. Medina-Cabuto's presence in the Utah
(continued...)

Following the parties' arguments, the district court applied the firearm enhancement to the sentence, determining Mr. Medina-Cabuto could reasonably foresee the presence of firearms in the residence in connection with the protection of the large quantity of drugs he pled guilty to distributing. It then imposed a sentence of 168 months imprisonment, concluding such a sentence was appropriate, given the seriousness of the drug offense.

## II. Discussion

### A. Firearm Enhancement

Mr. Medina-Cabuto now appeals his 168-month sentence, based in part on his argument the district court's enhancement of his sentence for gun possession under U.S.S.G. § 2D1.1 violated *Booker*. In so arguing, he suggests: 1) he did not admit to possession of any guns; 2) he arrived at the home only a few hours before the search and was on the bottom floor of the residence when the gun was found in a co-defendant's bedroom on the upper floor; 3) no evidence proves he brought drugs into the house; 4) he was not mentioned in any of the reports

---

[2](...continued)
residence at the same time as the drugs and firearms; and 6) the unlikelihood others would allow him into a residence with such a large quantity of drugs and drug cutting paraphernalia if he did not have a significant role in the drug enterprise.

concerning the investigation; 5) no reports or other documents show he possessed, used, handled, or was present around the firearms; 6) the probation officer submitted no information to support the gun possession enhancement, and, instead, the government asked the district court to make "a lot of" inferences from the evidence presented to apply such an enhancement; 7) no jury determined he possessed a gun; and 8) *Booker* prevents a judge from making such a finding.

We begin our discussion with our standard of review and the applicable legal principles. "Even after *Booker*, when reviewing a district court's application of the Sentencing Guidelines, we review legal questions *de novo* and ... any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006) (quotation marks and citations omitted). The Sentencing Guideline at issue, § 2D1.1(b)(1), provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the drug trafficking offense, and reflects the "increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1, cmt. n.3. Commentary to § 2D1.1(b)(1) further states that the enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* Generally, we have held possession under § 2D1.1(b)(1) is

"satisfied by showing mere proximity to the offense." *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997). "This burden is satisfied when the government demonstrates that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005) (quotation marks and citation omitted), *cert. denied*, 547 U.S. 1091 (2006). As a result, the government need only show the weapon was found in the same location where drugs or drug paraphernalia are stored, or in the general vicinity of where part of the drug activity occurred. *See id*. Nothing in our case law or the Guidelines requires that the drugs and firearms be found together in the same room for a firearm enhancement to apply.

In addition, "Section 1B1.3(a)(1) directs courts applying a specific offense characteristic such as 2D1.1(b)(1) to consider 'all acts and omissions committed or aided and abetted ... that occurred during the commission of the offense,'" which includes "'conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant,' regardless whether a conspiracy is charged." *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991) (quoting U.S.S.G. § 1B1.3(a)(1)(A) and (B) & cmt. n.2). "Together these provisions permit sentencing courts to attribute to a defendant weapons possessed by his codefendants if the possession of weapons

was known to the defendant or reasonably foreseeable by him." *Id.* And finally, we have long recognized firearms are "tools of the trade" for drug traffickers. *See United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991).

In this case, the firearms and ammunition were located in the same residence at the same time as large amounts of methamphetamine, cutting paraphernalia, and other drug related items, making it clear the entire residence, including the garage, was the locus of a large drug-trafficking operation. Because the guns and ammunition were found in the same residence or vicinity as this large-scale drug-trafficking operation and were clearly accessible to the co-defendants involved, we cannot say the district court erred in its determination the drugs and other paraphernalia were in the proximity of the firearms for the purpose of applying the enhancement.

Having determined the requisite proximity existed between the contraband and firearms, we turn to the foreseeability issue to determine if Mr. Medina-Cabuto could have reasonably foreseen that others involved in the large drug-trafficking operation would possess firearms. The evidence presented indicates Mr. Medina-Cabuto was directly involved or played a significant role in the instant drug operation, as further corroborated by his stipulation that the 600

grams of methamphetamine belonged to him and his co-defendants and that they intended to sell or distribute it. Based on his significant role or participation in the operation, together with the volume and open visibility of the methamphetamine and cutting materials, it would be clear to Mr. Medina-Cabuto, even if he arrived at the residence only hours before, that it was the locus of a rather large drug-trafficking operation and that firearms would likely be used to protect such an operation. Based on these circumstances, the district court did not commit clear error in determining Mr. Medina-Cabuto could reasonably foresee that others participating with him in the jointly-undertaken criminal activity would possess firearms for the protection of those drugs.

Moreover, Mr. Medina-Cabuto has not offered any evidence or reasoning sufficient to demonstrate the firearms were unconnected to his criminal conduct. His argument he did not admit to possession of any guns and that no evidence showed he possessed or handled the guns is immaterial under the applicable law, as is the fact that he was not found in the same room where the firearms were located. Given he pled guilty to the offense charged, we also find unavailing and immaterial his argument that no evidence proved he brought drugs into the house. While he suggests the probation officer submitted no information to support the gun possession enhancement, the record on appeal is replete with evidence

supporting the district court's application of the enhancement.

Next, we reject Mr. Medina-Cabuto's argument a jury, and not a judge, must make factual findings in applying the firearm enhancement. We have held *Booker* permits enhancement of a sentence on the basis of judicial fact-finding by a preponderance of the evidence when the Guidelines are applied, as they were here, in an advisory manner. *See United States v. Bustamante*, 454 F.3d 1200, 1202 (10th Cir. 2006). Having rejected Mr. Medina-Cabuto's argument the judge improperly made factual findings in applying the firearm enhancement, we also disagree with his assertion it impermissibly drew inferences from the evidence presented. We have long held the weight to be given evidence, together with the inferences, deductions, and conclusions to be drawn from such evidence, is a matter most appropriate for resolution by the district court. *See United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007); *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991).

## B. Presumption of Reasonableness

We now turn to Mr. Medina-Cabuto's argument that in reviewing the reasonableness of his sentence under the sentencing factors set out in 18 U.S.C. § 3553(a), this court cannot, on appellate review, apply a presumption of

reasonableness to his sentence, which is within the advisory Guidelines range. We note that in this case the district court sentenced Mr. Medina-Cabuto within the Guidelines range and he does not claim the Guidelines range itself was improperly calculated, but only that the application of the firearm enhancement under § 2D1.1 was unreasonable. Having rejected the latter contention, we turn to the uncontested calculation of his sentence and our standard of review.

In reviewing Mr. Medina-Cabuto's sentence, we review for reasonableness the sentence's length, as guided by the factors in 18 U.S.C. § 3553(a). *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (*per curiam*). We recognize that the district court has significant discretion in sentencing, and our review for reasonableness is a review for an abuse of discretion. *See Rita v. United States*, ___ U.S. ___, 127 S. Ct. 2456, 2465 (2007); *United States v. Garcia-Lara*, ___ F.3d ___, 2007 WL 2380991, at **3-4 (10th Cir. Aug. 22, 2007). In conjunction with this standard of review, our binding precedent has been to give sentences "properly calculated under the Guidelines ... a rebuttable presumption of reasonableness." *Kristl*, 437 F.3d at 1054. The Supreme Court recently affirmed our application of the presumption of reasonableness to within-Guidelines sentences. *See Rita*, ___ U.S. at ___, 127 S. Ct. at 2465; *see also Garcia-Lara*, 2007 WL 2380991, at **3-4.

Having considered Mr. Medina-Cabuto's sentence under our standard of review and binding precedent, we find no abuse of discretion in the 168-month sentence imposed, which is within the advisory Guidelines range of 168 to 210 months imprisonment. The district court in this case explicitly considered the factors in § 3553(a), and we continue to apply a presumption of reasonableness to Mr. Medina-Cabuto's sentence, which is within the correctly-calculated Guidelines range, and which he has not rebutted. *See Kristl*, 437 F.3d at 1053-55.

III. Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Medina-Cabuto's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge