FILED
United States Court of Appeals
Tenth Circuit

December 21, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

ALICE LOU MCCLURE, a/k/a Alice
Aragon,

  Defendant-Appellant.

No. 08-8066
(D.Ct. No. 2:07-CR-00237-WFD-4)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **BRORBY**, and **GORSUCH**, Circuit Judges.

  Appellant Alice Lou McClure pled guilty to one count of conspiracy to

traffic in methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and

846, and one count of possession with intent to distribute at least 500 grams but

less than 1.5 kilograms of methamphetamine, in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(A).  She now appeals her 188-month sentence, claiming the

district court erred in:  (1) increasing by two levels her base offense level under

---

  [*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2D1.1(b)(1)

for possession of two firearms; (2) increasing her criminal history by two points

under U.S.S.G. § 4A1.1(d) for committing the instant methamphetamine

conspiracy offense while on unsupervised probation for another offense; and (3)

failing to apply a two-level safety valve reduction under U.S.S.G. § 5C1.2. We

exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and

affirm Ms. McClure's sentence.

## I. Factual and Procedural Background

The charges against Ms. McClure arose out of an investigation concerning

a methamphetamine trafficking conspiracy which began in 2004 in southwestern

Wyoming. During the same year, Albert Ramos Guerra became romantically

involved with Ms. McClure and left Wisconsin to live with her in her single-wide

trailer in Rock Springs, Wyoming. Based on interviews later conducted by Drug

Enforcement Administration Special Agent Steven Woodson, Ms. McClure and

Mr. Guerra began distributing methamphetamine almost immediately after he

moved in with her in 2004, and, through her, he met the sources they used to

purchase the methamphetamine, which included other members of the instant drug

trafficking conspiracy. Mr. Guerra and Ms. McClure began distributing

methamphetamine by purchasing and reselling relatively small ounce quantities

but eventually, by 2007, increased the amount they purchased and sold to as much

as a pound for each transaction, which occurred as frequently as every week or two.  During part of this time, from May 2004 to May 2005, Ms. McClure was serving a deferred sentence of unsupervised probation for driving under the influence.

By 2007, as part of the investigation into the methamphetamine conspiracy, a confidential informant made three methamphetamine purchases from Mr. Guerra, including one-half ounce on January 12, 2007; fifty-two grams on January 15, 2007; and eighty-two grams on February 1, 2007.  Based on these purchases, agents obtained and executed a search warrant on February 1, 2007, for the trailer where Mr. Guerra and Ms. McClure resided.  During the search, they found and seized electronic scales; approximately one-half pound of methamphetamine in the living room; a .22 magnum pistol from a cabinet in the living room; and a .22 caliber rifle from the utility room, as well as ammunition, various payment and debt ledgers, marijuana, prescription pills, and other drug paraphernalia.  In addition, the agents found and seized one-half pound of methamphetamine in a vehicle belonging to Mr. Guerra and another 99.9 grams of methamphetamine from a vehicle belonging to both Mr. Guerra and Ms. McClure.

Following her indictment on multiple methamphetamine trafficking counts, Ms. McClure entered into a written plea agreement in which she agreed to plead

guilty to one count of conspiracy to traffic in methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). She also stipulated her relevant conduct involved at least 500 grams but less than 1.5 kilograms of methamphetamine.

During her change of plea hearing, the district court conducted a Rule 11 colloquy during which it discussed with Ms. McClure the factual basis for her guilty plea to the drug conspiracy count, including the time frame of her participation in the conspiracy. It began by asking her whether she read and understood the conspiracy count, which stated, "from ... January 2004, through and including the return of this indictment*,*" she conspired to possess with intent to distribute methamphetamine, to which she answered, "yes." Ape. App., Vol. 1 at 66-67. She also stated she reviewed the charge with her attorney. The district court then asked if she understood the portion of the document called "Elements of the Crime and the Prosecutor's Statement," which stated the government must prove that "from ... January 2004 through and including September 19, 2007*,*" she participated in the conspiracy, to which she also responded, "yes." *Id.* at 85-86. The following discussion then occurred:

The Court: *Were you involved in a criminal conspiracy as identified in Count One of this indictment in a period of time from in or about January 2004*

*through and including September 19, 2007?*

[Ms. McClure]:     *Yes, Your Honor.*

  ....

The Court:     What did you do, ma'am?

[Ms. McClure]:     I was involved with a delivery of meth with my boyfriend.

The Court:     Explain in detail what you did as part of this conspiracy.

[Ms. McClure]:     We sold meth, bought it, sold it.

*Id.* at 88-89 (emphasis added). The final discussion regarding the date of her involvement in the conspiracy then occurred:

The Court:     And all of these events occurred within the time frame identified in this indictment count; and, that is, *from beginning on or about January 2004 through and including September 19, 2007?*

[Ms. McClure]:     *The large amounts was [sic] just from like maybe November of 2006 to January of 2007. Before that it wasn't big, huge amounts.*

*Id.* at 91 (emphasis added).


Following the district court's acceptance of Ms. McClure's guilty plea, a probation officer prepared a presentence report, applying the 2007 Guidelines and calculating her base offense level at 36 as a result of her stipulation to distributing at least 500 grams but less than 1.5 kilograms of methamphetamine.

The probation officer also recommended a two-level increase to the offense level for possession of dangerous weapons under U.S.S.G. § 2D1.1(b)(1), which, in this case, involved recovery of two firearms, and also recommended a three-level reduction in the offense level for Ms. McClure's acceptance of responsibility, for a total offense level of 35.

In calculating Ms. McClure's criminal history category, the probation officer increased her criminal history points by two, under U.S.S.G. § 4A1.1(d), for committing the instant methamphetamine conspiracy offense while on unsupervised probation for her conviction for driving under the influence. A total offense level of 35, together with a criminal history category of II, resulted in a recommended advisory Guidelines range of 188 to 235 months imprisonment. The probation officer also pointed out the statutory minimum sentence for Ms. McClure's offense was ten years.

Thereafter, Ms. McClure filed three objections to the presentence report, regarding: (1) the recommended two-level offense level increase under U.S.S.G. § 2D1.1(b)(1) for possession of firearms; (2) the recommended two-point criminal history increase under U.S.S.G. § 4A1.1(d) for committing the instant methamphetamine conspiracy offense while on unsupervised probation; and (3) the probation officer's failure to recommend and apply a two-level safety valve

reduction under U.S.S.G. § 5C1.2. In making her objections, Ms. McClure claimed the two-point criminal history increase did not apply because the evidence showed her involvement in the conspiracy only included 2006 and 2007, and not the year of her probation, which ran from 2004 to 2005. As to the firearm enhancement, Ms. McClure asserted she had no knowledge of the rifle found by agents in her home or that her boyfriend, Mr. Guerra, traded drugs for weapons. Finally, she argued that without the objectionable firearm enhancement she qualified for a two-level safety valve reduction. Ms. McClure did not otherwise object to the facts provided in the presentence report.

At the sentencing hearing, Ms. McClure again objected to the firearm enhancement and two-point criminal history increase and requested application of a safety valve reduction – all based on the same arguments previously presented. In turn, the government pointed out Ms. McClure and Mr. Guerra lived together and participated as partners in a business selling drugs out of their home and they would likely have communicated about the firearms, or, alternatively, Ms. McClure would have reasonably foreseen Mr. Guerra, as a co-conspirator in the distribution of drugs, would possess a firearm. It also pointed out that during her change of plea hearing, Ms. McClure admitted to her participation in the drug conspiracy from 2004 to 2007, during the time of her unsupervised probation, even though the amount of drugs sold in the early years of their conspiracy was

less than the amount sold later on. It also presented the testimony of Special Agent Woodson, who, as previously mentioned, testified Mr. Guerra and Ms. McClure began distributing methamphetamine almost immediately after he moved in with her in 2004, and, through her, he met the sources they used to purchase the methamphetamine. Special Agent Woodson also testified it is not uncommon to encounter firearms in the course of investigating methamphetamine conspiracies, and Mr. Guerra disclosed to him he traded drugs for the firearms at issue.

Following this testimony and the parties' arguments, the district court determined a two-point increase applied in calculating Ms. McClure's criminal history category because the instant offense was clearly committed while serving a one-year term of unsupervised release for driving under the influence, regardless of the fact her involvement in the conspiracy at that time was more modest than later on. It next held a two-level increase for possessing a dangerous weapon applied because: (1) agents found the two firearms in her single-wide trailer, which it found was an intimate dwelling where it would be inconceivable she would be unaware of their presence; (2) the drugs to which she pled guilty of possessing were in close proximity to those guns; and (3) the presence of the guns was reasonably foreseeable to her and others during the course of the drug conspiracy. Based on these findings, the district court determined the safety

valve reduction did not apply to Ms. McClure. It then imposed a sentence at the low end of the recommended Guidelines range for a term of 188 months imprisonment.

## II. Discussion

### A. Standard of Review

Ms. McClure now appeals her 188-month sentence based on the same issues and arguments presented in her objections to the presentence report and at the sentencing hearing. She does not otherwise appeal the reasonableness of her sentence.

We begin with a discussion of our standard of review and the applicable legal principles.[1] "Even after *Booker*, when reviewing a district court's application of the Sentencing Guidelines, we review legal questions *de novo* and ... any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006) (quotation marks and citations omitted). "Clear error exists

---

[1] Rather than providing the standard of review for the first two issues on appeal, counsel for Ms. McClure merely cites to our jurisdictional statute, 18 U.S.C. § 3742, under the heading "Standard of Review" at the beginning of her brief. We kindly remind counsel the appellant's brief should contain "for each issue, a concise statement of the applicable standard of review," together with citations to the authorities on which the appellant relies. Fed. R. App. P. 28(a)(9)(A) and (B).

if a factual finding is wholly without factual support in the record, or after reviewing the evidence, we are definitively and firmly convinced that a mistake has been made." *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) (quotation marks and citation omitted). In pursuing sentence enhancements, "[t]he government bears the burden of proving sentencing enhancements by a preponderance of the evidence," *United States v. Orr*, 567 F.3d 610, 614 (10th Cir. 2009), and "showing facts necessary to justify the addition of criminal history points," *United States v. Randall*, 472 F.3d 763, 766 n.1 (10th Cir. 2006). On the other hand, the defendant bears the burden of showing by a preponderance of the evidence she is eligible for safety valve relief. *See United States v. Payton*, 405 F.3d 1168, 1170 (10th Cir. 2005).

## B. Firearm Enhancement

Having discussed the standard of review and the parties' burdens, we turn to the legal principles implicated. The first Guidelines section at issue, § 2D1.1(b)(1), provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the drug trafficking offense, and reflects the "increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 cmt. n.3. Commentary to § 2D1.1(b)(1) states the enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id*. Generally, we have held

possession under § 2D1.1(b)(1) is "satisfied by showing mere proximity to the offense." *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997). "This burden is satisfied when the government demonstrates that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005) (quotation marks and citation omitted). As a result, the government need only show the weapon was found in the same location where drugs or drug paraphernalia are stored or in the general vicinity of where part of the drug activity occurred. *See id*.

In addition, "[S]ection 1B1.3(a)(1) directs courts applying a specific offense characteristic such as [§] 2D1.1(b)(1) to consider 'all acts and omissions committed or aided and abetted ... that occurred during the commission of the offense,'" which includes "'conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant' regardless whether a conspiracy is charged." *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991) (quoting U.S.S.G. § 1B1.3(a)(1)(A) & (B) & cmt. n.2). "Together these provisions permit sentencing courts to attribute to a defendant weapons possessed by his [or her] codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him [or her]." *Id*. In addition, we have long

-11-

recognized firearms are "tools of the trade" for drug traffickers. *See United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991).

In this case, the government met its burden of proving the firearm sentencing enhancement. *See Orr*, 567 F.3d at 614. It presented evidence showing the firearms and ammunition were located in Ms. McClure and Mr. Guerra's residence and vehicles at the same time and place as the discovery of large amounts of methamphetamine and other drug paraphernalia, making it clear the entire residence, as well as the vehicles, constituted the locus of their drug trafficking operation. Accordingly, the drugs and other paraphernalia were in sufficient proximity to the firearms for the purpose of applying the enhancement. Next, by her own admission, Ms. McClure participated in the instant drug conspiracy, and the evidence presented establishes not only that the firearms were located in her small home, but were most likely accessible or visible to her, regardless of whether she was aware of how Mr. Guerra obtained the guns. Even if, as Ms. McClure claims, she did not know the firearms were in their trailer or that Mr. Guerra traded drugs for them, we agree with the district court that Ms. McClure could reasonably have foreseen Mr. Guerra would possess firearms in conjunction with their drug trafficking conspiracy. For these reasons, we hold the district court did not err in attributing to Ms. McClure the firearms obtained by Mr. Guerra because the possession of those firearms was either known to her or

reasonably foreseeable to her in their jointly-undertaken criminal enterprise.[2] *See*

*McFarlane*, 933 F.2d at 899.


C.  Criminal History Increase

The next Guidelines section at issue, § 4A1.1(d), provides for a two-point

increase in calculating a defendant's criminal history category "if the defendant

committed the instant offense while under any criminal justice sentence, including

*probation*, parole, supervised release, imprisonment, work release, or escape

status."  U.S.S.G. § 4A1.1(d) (emphasis added).  A note to § 4A1.1(d) reiterates

two points are added "if the defendant committed any part of the instant offense

---

[2]  In her appellate brief, Ms. McClure relies on an Eighth Circuit case, *United States v. Lopez*, 384 F.3d 937, 944 (8th Cir. 2004), for the proposition that "a two-level firearm enhancement can only be applied if the Government shows that the defendant knew or should have known based on specific past experiences with the co-conspirator that the co-conspirator possessed a gun and used it during drug deals."  Not only are we not bound by another circuit's precedent, but the facts in *Lopez* are very different from those presented here.  In this case, the guns at issue were found in Ms. McClure's single-wide trailer where undisputed evidence showed she and Mr. Guerra lived, kept drugs, and conducted drug transactions.  In *Lopez*, the defendant received a gun enhancement for a firearm which was not in his possession but found in the vehicle of someone to whom he had delivered drugs as part of a conspiracy.  *See* 384 F.3d at 940-41.  The Eighth Circuit determined the government failed to present any evidence showing the defendant knew or should have known that the person to whom he delivered drugs possessed a firearm.  *Id.* at 944.  In this case, the government provided sufficient evidence to show Ms. McClure knew or should have known of the existence of guns located in the cabinet of her own living room and in her utility room or that, based on their relationship and ongoing drug trafficking conspiracy over the past three years, Mr. Guerra would possess a gun in conjunction with the drugs they kept in their residence.

(i.e., any relevant conduct) while under any criminal justice sentence ....” *Id.,*
cmt. n.4.

In this case, it is clear the district court found the government met its
burden of showing facts necessary to justify the addition of criminal history
points to Ms. McClure’s sentence calculation. *See Randall*, 472 F.3d at 766 n.1.
As previously discussed, the government presented the testimony of Special
Agent Woodson establishing that Mr. Guerra and Ms. McClure began distributing
methamphetamine, through sources to whom she introduced him, almost
immediately after he moved in with her in 2004. In addition, Ms. McClure
repeatedly acknowledged at her plea hearing she was involved in a criminal
conspiracy during the period of time from January 2004 to September 2007,
although she and Mr. Guerra sold smaller drug quantities early on in the
conspiracy. During this time, it is also undisputed Ms. McClure was serving a
deferred sentence of unsupervised probation from May 2004 to May 2005 for a
conviction for driving under the influence. For these reasons, the district court
did not commit clear error in increasing her criminal history by two points under
U.S.S.G. § 4A1.1(d) for committing the instant methamphetamine conspiracy
offense while on unsupervised probation for her conviction for driving under the
influence.

-14-

D.  Safety Valve

The last Guidelines section at issue is § 5C1.2, which is referred to as the "safety valve" guideline.  It states "the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" if it finds the defendant meets all of the criteria listed.  U.S.S.G. § 5C1.2(a).  This guideline follows 18 U.S.C. § 3553(f), which similarly states the district court must "impose a sentence pursuant to guidelines ... without regard to any statutory minimum sentence," if it finds at sentencing the defendant meets all of the safety valve criteria.  18 U.S.C. § 3553(f).  In this case, Ms. McClure's 188-month sentence is within the Guidelines range, which happens to be more than the minimum sentence requirement of ten years.  She contests the district court's failure to apply the safety valve guideline for the purpose of reducing her sentence.  The only contested safety valve criterion at issue is whether Ms. McClure "possess[ed] a firearm or other dangerous weapon (or induce[d] another participant to do so) in connection with the offense."  U.S.S.G. § 5C1.2(a)(2).  If she did, Ms. McClure is ineligible for a safety valve reduction.

As previously indicated, the "mere propinquity of the weapons and drugs suggests a connection between the two," *see Payton*, 405 F.3d at 1171, so that "[a] firearm's proximity and potential to facilitate the offense is enough to prevent application of U.S.S.G. § 5C1.2(2)," *United States v. Hallum*, 103 F.3d

-15-

87, 89 (10th Cir. 1996).  A district court's determination on whether to apply a safety valve reduction "is fact specific and dependent on credibility determinations that cannot be replicated with the same accuracy on appeal." *United States v. Stephenson,* 452 F.3d 1173, 1180 (10th Cir. 2006).

In this case, the district court credited the government's evidence agents found the firearms in Ms. McClure's small trailer in close proximity to drugs and other drug paraphernalia, which it determined made Ms. McClure ineligible for the safety valve provision.  Under the circumstances presented, we cannot say the district court committed clear error as its factual findings are not without support in the record, nor are we otherwise left with a definite and firm conviction a mistake has been made.  Thus, for the foregoing reasons, we find the district court imposed a correctly-calculated sentence within the advisory Guidelines range to which we apply a presumption of reasonableness and which Ms. McClure has not rebutted.  *See United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006).

III.  Conclusion

Accordingly, we **AFFIRM** Ms. McClure's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge