**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 17, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES KROLOPP,

Defendant-Appellant.

No. 10-1548
(D.C. No. 1:10-CR-00153-CMA-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES** and **ANDERSON**, Circuit Judges, **BRORBY**, Senior Circuit Judge.

---

Defendant-appellant James Krolopp pleaded guilty to one count of possession of a sawed-off shotgun in violation of 26 U.S.C. §§ 5845(a)(1) and (2), 5861(d), and 5871; and one count of possession with intent to distribute more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). The

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court sentenced him to 120 months' imprisonment on the shotgun possession count and 135 months on the methamphetamine possession count, to be served concurrently. On appeal, Krolopp challenges his sentence on the methamphetamine possession count, contending that the district court should not have applied a two-level enhancement under United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1) (2009) based on his possession of a firearm during the commission of the drug offense. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

On March 12, 2010, officers of the Denver Police Department executed a search warrant at Krolopp's residence in Denver. During the search, they recovered approximately 229 grams of a mixture or substance containing a detectable amount of methamphetamine. The drugs were found in several different locations throughout the house, including the living room, the basement, and Krolopp's bedroom. The amount of methamphetamine found in the bedroom was less than two grams.

While executing the warrant, officers noticed an extensive display of edged weapons, such as knives, affixed to the walls throughout the house. During his search of the bedroom, one of the officers observed a large picture attached to the wall over the head of the bed. The picture was attached to the wall with Velcro.®

When the officer detached the picture from the wall, a sawed-off shotgun fell from behind the picture onto the bed.

The shotgun had been manufactured by the Bridge Gun Company sometime between 1905 and 1920. It was a single-shot, break-open 16 gauge model with a barrel length of approximately 13.5 inches and an overall length of 19.5 inches. The shotgun was not loaded and apparently had electrical tape wrapped around its stock. It was not registered in the National Firearms Registration and Transfer Record. It did not appear to be particularly valuable as a collector's item.[1] When test-fired, however, it was found to be functional.

No ammunition for the shotgun was found in Krolopp's residence. In his bedroom closet, however, officers found 33 rounds of 9mm ammunition. They also found an 1847 Connecticut Valley Arms black powder pistol in the living room closet. No charges were filed based on the black powder pistol.

Krolopp eventually pleaded guilty to two counts of a four-count federal indictment based on the drugs, shotgun, and ammunition recovered during the search. The remaining two counts were dismissed. The presentence report recommended that the base offense level for advisory Sentencing Guideline purposes be increased by two levels because Krolopp "possessed a firearm during

---

[1]     One of the officers testified that "[t]hrough research on the internet, I determined that that firearm, with a full barrel, in fair condition, with a full stock, was on sale for approximately $79." R., Vol. 2 at 84.

the commission of the instant offense." R., Vol. 3 at 68. Krolopp objected to this recommendation, contending that he did not possess the shotgun in connection with his drug trafficking.

At sentencing, Krolopp testified that the shotgun and black powder pistol were part of his collection of antique weapons. This collection included "every weapon imaginable . . . just anything with a blade on it or different kind of night sticks [and] crossbows." *Id.*, Vol. 2 at 88. Krolopp stated he did not keep the shotgun or black powder pistol on display as part of the collection because he was on home surveillance monitoring for a state driving-under-revocation conviction and his home was subject to search by the authorities at any time. He knew he was a convicted felon prohibited from possessing firearms.

Krolopp denied that he possessed any of his weapons for intimidation or in connection with his methamphetamine sales. He stated he found the shotgun in a ditch, took it home to include it in his collection, and did not think it even worked.

At the close of the testimony, the district court found that Krolopp's evidence against application of the enhancement for possession of a firearm lacked credibility. It stated: "The Court does not find the defendant to be credible, in that the gun was Velcroed behind another picture above his bed. The Court also note[s] that the stock of the gun was taped with what appears to be

black electrical tape." *Id.* at 114.[2] The court noted that the shotgun was "within arm's reach if needed." *Id.* It concluded that there was "adequate evidence demonstrating that the sawed-off shotgun in this case was operational and served some purpose with respect to the defendant's drug dealings." *Id.* at 115. Accordingly, it applied the § 2D1.1(b)(1) enhancement in calculating the advisory Guideline sentencing range.

## DISCUSSION

### 1. Standard of Review

The parties disagree concerning the standard of review applicable to the district court's findings and enhancement. To address their disagreement we must briefly discuss the nature of the enhancement and the applicable burden of proof.

U.S.S.G. § 2D1.1(b)(1) provides for a two-level specific-offense enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during commission of the applicable drug offense. "[T]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1) cmt. n. 3. To justify the enhancement, the government bore the initial burden of proving by a preponderance of the evidence that Krolopp possessed the weapon. *See United*

---

[2] This observation seems to have been based on the court's review of a photograph of the shotgun rather than direct testimony about its characteristics. The photograph is not part of the record on appeal. But Krolopp does not challenge this finding of the district court.

*States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001). This burden was satisfied when the government demonstrated "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005) (quotation omitted). The parties agree that the government satisfied its burden on that point. Accordingly, the burden shifted to Krolopp to show that it was "clearly improbable the weapon was connected with the offense." *See id.* at 1239 (quotation omitted).

In reviewing whether the district court properly applied § 2D1.1(b)(1), we review legal questions de novo and factual findings for clear error, giving due deference to the sentencing court's application of the Guidelines to the facts. *United States v. Pompey*, 264 F.3d 1176, 1180 (10th Cir. 2001). Krolopp argues that he has presented a purely legal question deserving of de novo review: whether the facts found by the district court were "insufficient *as a matter of law* to defeat the conclusion that any connection between the gun and his drug dealing is clearly improbable." Aplt. Br. at 10 (emphasis added) (relying on *United States v. Alexander*, 292 F.3d 1226, 1229 (10th Cir. 2002) (noting, in § 2D1.1(b)(1) context, that "where the appellant asks the court to interpret the Guidelines or hold the facts found by the district court are insufficient as a matter of law to warrant an enhancement, the court must conduct a de novo review" (brackets, alteration, and internal quotation marks omitted))). The government

responds that review of the district court's application of the enhancement involves a factual issue subject to review for clear error, not a legal issue reviewed de novo. It also argues that in taking the position that a legal issue is involved, Krolopp has erected an extraordinary burden for himself: that of proving that the facts found by the district court *legally compelled a conclusion* that it was clearly improbable there was any connection between his possession of the gun and his drug dealing. We need not dwell on whether the proper standard here involves review of a legal or factual question. Simply put, whether we review the evidence and the district court's conclusions de novo or under a "clearly erroneous" standard of review, the district court properly determined that Krolopp failed to meet his burden of showing that it was clearly improbable that the weapon was connected with the offense.

### 2. Enhancement for Possession of a Weapon

Krolopp argues that he has met his burden of showing it was clearly improbable there was any connection between his possession of the shotgun and his drug dealing, for three reasons. None of these arguments suffices to meet his burden.

He argues, first, that "the shotgun was nearly 100 years old" and that its age suggests that he kept it as a collectible item, not as a weapon. Aplt. Br. at 11. But the evidence showed the gun was functional, its stock was wrapped in electrical tape suggesting a utilitarian rather than a decorative function, and it had

little value as a collector's item. *Cf. United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990) (noting that "sawed-off shotguns are not ordinarily considered collectibles, nor the type of gun one would mount for decoration").

Next, he contends that his concealment of the black powder gun, which was quite clearly a collectible, demonstrates that he only displayed part of his collection and thus, that his concealment of the shotgun is not at odds with a determination that it was kept as a collectible item. But the manner in which he concealed the shotgun, placing it behind a picture velcroed to a wall where it was readily accessible, cannot be ignored. Moreover, the collectible nature of the black powder gun is not attributable to the shotgun merely because they were both found in a house that contained other non-projectile weapons kept as collectible items.

Finally, Krolopp argues that he had no ammunition for the shotgun. This factor is not dispositive. *See, e.g., United States v. Paulk*, 917 F.2d 879, 882 (5th Cir. 1990) ("Since it is difficult, if not impossible to tell from sight whether a gun is loaded or operational, an unloaded or broken gun may be of use in a criminal act. Flashing an unloaded gun often has the same effect as waving a loaded one").

## 3. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge